**William Curtis CATES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–01149–CR.**

Court of Appeals of Texas,
Dallas.

Nov. 16, 1987.

Molly Meredith LeNoir, Anne Adair, Dallas, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before STEPHENS, STEWART and BAKER, JJ.

STEWART, Justice.

William Curtis Cates was convicted of injury to a child and sentenced to ten years' confinement and a fine of $2,000. In two points of error, appellant contends that: 1) the trial court erred in allowing a social worker to testify to statements of appellant made while he was confined to jail; and 2) the evidence is insufficient to support the conviction. For the reasons below, we affirm.

Joanna Vatsis, an investigator with the Department of Human Resources (DHR), received a telephone call concerning a three or four year old child who was allegedly covered with bruises and locked in a closet. Two days later, Vatsis went to the room in a motel where the child resided with appellant (her step-father), her mother and her half-brother. When Vatsis asked the mother if she had a three or four year old child, the mother and appellant went to a closet located at the back of the motel room and brought out a child who appeared to be approximately three years old.

The child was wearing only underpants and Vatsis could see dark bruising around her face. She walked with a limp because one leg was very swollen. There were obvious bruises on her legs. The tops of her hands were swollen, her hands were cut and her arms were bruised. Her movements were very labored and she appeared to be in a great deal of pain. Vatsis took the mother and the two children to her office in her car and asked appellant to follow in his car.

At her offices, Vatsis spoke to the child alone. Vatsis testified, "she told me her daddy had done that to her—her daddy had beat her legs." The child said that by "daddy" she meant appellant. The child appeared to be in an extreme amount of pain, so Vatsis called an ambulance to take her to the hospital. At the hospital, Vatsis again spoke with the child who told her that her daddy hit her legs with a belt and made them bleed, would not let her eat, and hit her in the mouth.

The physician who examined the child testified that the child had extensive external injuries, did not walk well, was extremely quiet and apprehensive and was in obvious pain. The doctor's examination of the child revealed the following injuries: 1) four or five areas on the scalp where hair was pulled out; 2) a bruised left ear; 3) a bruised and swollen upper lip; 4) bruises on her forehead; 5) upper teeth knocked loose and bleeding gums; 6) multiple bruises on the back, chest and abdominal area; 7) buttocks and the back and sides of the thighs completely bruised and purple; 8) abrasions on the legs indicating belt marks; 9) bruises to the pubic and pelvic bones; 10) bruises on inner thigh, genitals and vagina; 11) a tear to the posterior area of the vagina, characteristic with her having been kicked with a boot or shoe; and 12) rectal bruises.

Although x-rays revealed no broken bones or internal injuries, the physician testified that of the one thousand children he sees in a year, he only sees one to two cases of abuse this bad. He further testified that it is possible that the child's injuries could have been accidentally caused, but that such injuries could result only from a severe accident such as a car wreck or falling from a third story balcony. The State also introduced into evidence photographs of the child taken at the hospital, depicting the injuries described above.

Appellant did not appear at the Department of Human Resources as Vatsis had requested. The police checked the motel but could not locate him there. They went to his place of employment and arrested him as he was leaving the building. Appellant's car was packed with boxes, suitcases and clothes.

Vatsis testified that she visited appellant while he was in jail. The visit was a routine part of her job, which includes gathering family background information and validating allegations of abuse, to help her decide how to handle cases assigned to her as a DHR investigator. Appellant told Vatsis, "I beat her. I'm not going to tell you I didn't beat her. I took my belt off, and I can't—don't remember what happened after that." He got the child out of bed at 2:00 A.M. when he got off work and began disciplining her because he was told she did not behave. Appellant also said it was a blessing that Vatsis showed up when she did or the child would have been dead.

■ We first address appellant's second point of error in which he contends that the evidence is insufficient to support his conviction for injury to a child. Specifically, appellant contends that evidence of the requisite intent is lacking. The indictment alleged that appellant did:

> then and there knowingly and intentionally engage in conduct that caused bodily injury to [V\_\_\_\_\_ O\_\_\_\_\_], hereinafter called complainant, a child 14 years of age or younger, hereinafter called complainant, by kicking said complainant with his foot and hitting said complainant with his hand, and a belt,

as proscribed by TEX.PENAL CODE ANN. § 22.04(a) (Vernon Supp.1987). The standard for appellate review of the sufficiency of the evidence is to view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Garrett v. State*, 682 S.W.2d 301, 304 (Tex.Crim.App.1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1876, 85 L.Ed.2d 168 (1985).

It is undisputed that the child was taken to the hospital with injuries. The child told Vatsis that appellant had hit her with a belt. Appellant admitted to Vatsis that he hit the child with a belt. Appellant contends, however, that the evidence establishes that he intended only to discipline the child. He relies upon *Beggs v. State*, 597 S.W.2d 375 (Tex.Crim.App.1980), for au-

thority that a defendant's mistaken belief concerning the results of his actions negates the necessary intent.

In *Beggs*, the defendant testified that she did not know that the bath water which scalded her granddaughter was hot enough to cause injury because her stepdaughter drew the bath water. The court held that the defendant was entitled to a charge on the mistake of fact defense. Here, no mistaken belief defense was raised. Appellant's testimony that he only meant to discipline the child and not to hurt her came during the punishment phase, after the jury's verdict of guilty.

The only evidence that appellant intended to discipline the child was Vatsis's statement that appellant got the child out of bed at 2:00 A.M. to discipline her. The jury may believe some witnesses and refuse to believe others and it may accept portions of the testimony of a witness and reject other portions. *Nixon v. State*, 572 S.W.2d 699, 700–01 (Tex.Crim.App.1978). The jury was free to consider appellant's credibility and his motive to make such a self-serving statement. *Johnson v. State*, 571 S.W.2d 170, 173 (Tex.Crim.App.1978); *Rider v. State*, 735 S.W.2d 291, 293 (Tex.App.—Dallas 1987, no pet.) (jury is the sole judge of credibility).

■ Appellant's intent can be established circumstantially, *Moore v. State*, 708 S.W.2d 484, 487–88 (Tex.App.—Dallas 1986, pet. granted), and may be inferred from his acts, words, and conduct. *Dues v. State*, 634 S.W.2d 304, 305 (Tex.Crim.App.1982). The jury could infer, from the severity of the injuries, from the fact that the child was kept locked in a closet after the beating, and from the instrumentalities used to accomplish the beating, that appellant acted knowingly and intentionally. We hold that the evidence is sufficient to support the conviction. Point of error two is overruled.

■ In his first point of error, appellant contends that his statements to Vatsis were the result of custodial interrogation and, therefore, inadmissible. *See* TEX. CODE CRIM.PROC.ANN. art. 38.22 (Vernon 1979 & Vernon Supp.1987). The Unit-

ed States Supreme Court defines custodial interrogation as "questioning initiated by law enforcement officers after a ·person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966). *Accord Newberry v. State*, 552 S.W.2d 457, 461 (Tex.Crim. App.1977).

It is clear that non-law enforcement personnel may engage in custodial interrogation. *See, e.g., Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (court appointed psychiatrist); *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) (Internal Revenue Service agent); *People v. Arnold*, 66 Cal.2d 438, 58 Cal.Rptr. 115, 426 P.2d 515 (1967) (prosecuting attorney); *Whitfield v. State*, 287 Md. 124, 411 A.2d 415, *cert. dism'd*, 446 U.S. 993, 100 S.Ct. 2980, 64 L.Ed.2d 850 (1980) (prison guard); *People v. Parker*, 82 A.D.2d 661, 442 N.Y.S.2d 803 (1981), *aff'd*, 57 N.Y.2d 815, 455 N.Y.S.2d 600, 441 N.E.2d 1118 (1982) (parole officer); *Matter of Stanley C.*, 120 Misc.2d 18, 465 N.Y.S.2d 449 (N.Y.Fam.Ct.1983) (Division For Youth counselor); *See also McCrory v. State*, 643 S.W.2d 725 (Tex.Crim.App.1982) (forensic psychiatrist). In Texas, however, the non-law enforcement questioner must be acting as an agent of law enforcement pursuant to a police practice before the safeguards attendant to custodial interrogation come into play. *Paez v. State*, 681 S.W.2d 34, 37 (Tex.Crim.App.1984).

In *Paez*, a DHR child placement worker visited the accused in the hospital because she was concerned about the accused's children and whether they had a place to stay. At the time the social worker spoke to Paez, she was under arrest and in custody; there were two uniformed policewomen in the hospital room, which was, in effect, a security room. During her conversation with the social worker, Paez incriminated herself in the shooting death of her husband. The Court of Criminal Appeals stated:

> Vera's employment with the Department of Human Resources, while making her an agent of the '*State*', does not auto-matically make her an agent of the '*State*', as we used that term in *McCrory*, meaning law enforcement and prosecution personnel. *Rhode Island v. Innis*, [446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)] makes it clear that the term 'custodial interrogation' encompasses only *police* practices.... [A] state employee must be acting as an agent of law enforcement pursuant to a police practice before the safeguards attendant to custodial interrogation come into play. Only under those circumstances do non-law enforcement personnel become agents of the *State* for purposes of distinguishing custodial interrogation from noncustodial interrogation.

*Paez*, 681 S.W.2d at 37 (emphasis original). The question in this case, then, is whether Vatsis was acting as an agent of law enforcement pursuant to a police practice.

Vatsis testified that she spoke to appellant in jail for approximately one hour. She knew there were criminal charges pending against him. She stated unequivocally that she was not acting as a law enforcement official, nor was she acting under the direction or control of law enforcement personnel. She was not at the jail to elicit information for any police officer. It was a routine part of her job to question all family members when DHR investigates reported abuse. Her report, including the conversation with appellant, was for use in civil court proceedings involving the parent-child relationship.

Vatsis and appellant were alone when she spoke with him. She identified herself as a child welfare worker assigned to the civil case. Although Vatsis did not give appellant *Miranda* warnings, she told him that he did not have to talk to her if he did not wish to. Appellant expressed a desire to keep his family together and Vatsis told him that was commendable but that it would be harder to help him if he did not talk to her. They talked about psychiatric counseling and possible visitation rights with appellant's infant son.

Vatsis told appellant the allegations made against him and asked him to explain

what had happened. Appellant then made the incriminating statements discussed previously. Vatsis stated she used no coercion to force appellant to make the statements. She did not threaten him, make any promises of leniency, or trick him. The statements were entirely voluntary.

We hold that the evidence is sufficient to support a finding that Vatsis was not acting as an agent of law enforcement during her conversation with appellant; therefore, appellant's admissions to Vatsis did not stem from custodial interrogation. Consequently, there was no need for the requirements of article 38.22 or *Miranda* to be met prior to admission of her testimony. *See Paez,* 681 S.W.2d at 38. Point of error one is overruled, and appellant's conviction is affirmed.