William Curtis CATES, Appellant,

v.

The STATE of Texas, Appellee.

No. 031–88.

Court of Criminal Appeals of Texas, En Banc.

June 7, 1989.

Rehearing Denied Sept. 13, 1989.

Molly Meredith LeNoir, Dallas, for appellant.

John Vance, Dist. Atty., and Pamela Sullivan Berdanier, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

DUNCAN, Judge.

Appellant was convicted by a jury of injury to a child pursuant to V.T.C.A. Penal Code, § 22.04. The trial court assessed punishment at ten years confinement in the Texas Department of Corrections and a fine of $2,000.00. We granted the appellant's petition for discretionary review to determine if the court of appeals was correct in its determination that appellant's oral confession was not a product of "custodial interrogation" and consequently the prophylactic warnings enunciated in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were unnecessary. See: *Cates v. State*, 748 S.W.2d 9 (Tex.App.—Dallas, 1987). We will vacate the judgment of the court of appeals.

The facts relevant to appellant's sole ground for review reveal that after appellant had been arrested on February 27, 1986, for the instant offense, and while in the Dallas County Jail, Joanna Vatsis, an investigator with the Texas Department of Human Resources (hereinafter DHR), on March 4, 1986, interviewed the appellant and was able to obtain admissions from him which were introduced in the State's case in chief. The record is clear that prior to the interview, which took place while appellant was incarcerated, no *Miranda* warnings were administered. The trial court denied appellant's motion to suppress his statements and in affirming its action the court of appeals concluded that Vatsis was not a law enforcement officer within the definition of "custodial interrogation" as defined by the United States Supreme Court. *Miranda v. Arizona*, supra, at 444, 86 S.Ct. at 1612.[1]

Relying on *Paez v. State*, 681 S.W.2d 34 (Tex.Cr.App.1984), the court of appeals concluded that the dispositive issue in the case was whether Vatsis was acting as an agent of law enforcement pursuant to a police practice. In *Paez*, supra, which also involved an investigator with the DHR, this Court in following its case by case approach adopted the "custodial interrogation" analysis announced in *McCrory v. State*, 643 S.W.2d 725 (Tex.Cr.App.1982).

---

1. In *Miranda*, the Court stated:

   Our holding will be spelled out with some specificity in the pages which follow but briefly stated it it this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. As for the procedural safeguards to be employed, unless other fully effective means are devised to inform accused persons of their right of silence and to assure a continuous opportunity to exercise it, the following measures are required. Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. [Footnote omitted]

It is obvious that employment by the DHR does not per se invest one with the status of a law enforcement officer or police agent. Rather, the record as a whole must clearly establish that the defendant's statement " 'resulted from a calculated practice' which all agents of the State present or involved knew was reasonably likely to evoke an incriminating response from ..." *McCrory, id.,* at 743. Simply put, the record must establish that when the appellant made the admissions, the DHR employee was utilizing her capacity so as to accomplish what the police could not have lawfully accomplished themselves. Moreover, in *Paez,* we also noted that in resolving this issue one must also consider whether the DHR employee was known to law enforcement personnel and whether it was reasonably likely that this individual would evoke or elicit an incriminating response within the meaning of *Miranda v. Arizona,* supra, and *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). With this standard in mind, we concluded that the investigator in *Paez* was not an agent of law enforcement officers as she was not conducting a child abuse investigation, but had gone to the hospital to see the defendant who was a client, to determine the well-being of the defendant's children. Paez, although charged with the murder of her husband, did not undergo "custodial interrogation" because the record indicated that the DHR employee was not an agent of law enforcement as we used that term in *McCrory.*

The court of appeals reached the same conclusion as we did in *Paez:* the record did not support a finding that Vatsis was acting as an agent of law enforcement. We disagree.

Central to the *Paez* decision was the fact that the DHR investigator was not functioning in her criminal investigative role as defined in the Texas Family Code.[2] Accordingly, we concluded that she was not acting as one whose business was to ferret out criminal child abuse and then report it to the local law enforcement agency. Rather, she was attempting to locate a home for the defendant's child, when during the course of that interview the defendant made incriminating statements. The conversation in *Paez* between the DHR investigator and the defendant was for the distinct purpose of a civil court proceeding involving the parent-child relationship.

Comparing the extant circumstances of *Paez* to the instant case the dichotomy is apparent. The record in *Paez* revealed the following:

(1) Vera, the DHR investigator, was not conducting an investigation of child abuse relative to the defendant's children nor was she attempting to interview the defendant concerning the murder of her husband or a criminal offense which was the basis of the criminal charges and conviction in that case.

(2) Although the defendant was in custody (at a hospital) and charged with the

2. As of the date of appellant's trial Chapter 34 of the Family Code set out the pertinent duties of a child abuse investigator:
§ 34.02. Contents of Report: to Whom Made
(a) Nonaccusatory reports reflecting the reporter's belief that a child has been or will be abused or neglected, or has died of abuse or neglect, has violated the compulsory school attendance laws on three or more occassions, or has, on three or more occasions, been voluntarily absent from his home without the consent of his parent or guardian for a substantial length of time or without the intent to return shall be made to any local or state law enforcement agency, and in addition shall be made to:
(1) The Texas Department of Human Services; or
(2) the agency designated by the court to be responsible for the protection of children.

(b) All reports must contain the name and address of the child, the name and address of the person responsible for the care of the child, if available, and any other pertinent information.
(c) All reports received by any local or state law enforcement agency shall be referred to the Texas Department of Human Services or to the agency designated by the court to be responsible for the protection of children. The department or designated agency immediately shall notify the appropriate state or local law enforcement agency of any report it receives, other than from a law enforcement agency, that concerns the suspected abuse or neglect of a child or death of a child from abuse or neglect.

murder of her husband, she was not accused, charged or suspected of child abuse.

(3) The interview conducted between the defendant and the DHR investigator was not interrogation initiated to extract or gather incriminating information from the defendant.

(4) The defendant in *Paez* was not the focus of a DHR investigation.

The facts of the case *sub judice* presents a significantly different situation for although Vatsis was not acting at the behest or as a surrogate for another more traditional police agency, in her capacity as a DHR investigator she was nevertheless operating as an agent of law enforcement in the State of Texas. The record is clear that appellant was the central figure in a criminal investigation concerning child abuse and indeed had been arrested for the present offense and was in the Dallas County Jail at the time of the interview. Appellant's arrest had resulted from information provided by Vatsis as well as police interviews of the child and the examining medical doctor. Appellant had been in jail five days on child abuse charges at the time Vatsis spoke with him and the questions propounded to him were calculated to evoke incriminating responses relevant to the pending charges.

The State counters that the record both at the motion to suppress and at trial includes testimony of Vatsis wherein she unequivocally declared she was not a law enforcement officer and that in any event since she did not have the power to arrest she could not be a member of the law enforcement community. We find neither argument persuasive. As this Court observed in *McCrory v. State,* supra, "[t]he courts cannot be expected to decide cases solely on the basis of self-serving statements by the defendant or the interrogating officer." *Id.,* at 733. See Smith, *The Threshold Question in Applying Miranda: what constitutes custodial interrogation?,* 25 S.C.L.Rev. 699, 713 (1974). Thus Vatsis's declarations are insufficient to provide us with a basis for a decision.

Whether a DHR investigator has the power to arrest is a factor which should be considered; however, an answer, positive or negative, certainly is not dispositive. In *Estelle v. Smith,* 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the United States Supreme Court held that a criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding. Dr. Grigson, the *sua sponte,* pretrial court ordered psychiatrist, certainly was not a traditional law enforcement officer possessed with the power of arrest under Texas law, yet it was concluded that a criminal defendant while in custody and faced with interrogation from the court ordered psychiatrist, the procedural safeguards of *Miranda* were essential.

The same is true with regards to Vatsis. Although she did not have the power to arrest, she was acting as an agent of law enforcement. Her function in pursuing a child abuser was for the enforcement of the Texas child abuse laws. Although it is not the responsibility of the DHR investigators to arrest the child abuse offender, it is their responsibility to discover child abuse and report it to the appropriate police agency. It is also the investigators' obligation in cases such as this one to provide the documentation necessary to procure the arrest of the alleged offender. Here the evidence gathered by Vatsis prior to the jail interview of appellant was instrumental in appellant's arrest.

Further, it is undisputed that appellant was in custody when interrogated by Vatsis and the questions propounded to the appellant was done so in her official capacity as a DHR investigator. The fact that Vatsis lacked the authority to arrest appellant does not detract from the reality of the situation. Vatsis was paid by the State of Texas for the express purpose of discovering, and investigating allegations of child abuse, and turning her findings over to the proper authority responsible for the prosecution of the child abuse offender.

Essential to our conclusion is the fact that Vatsis was not simply conducting a routine interview to assist her in solving the abuse problem within the family unit. Rather, it is evident that she was conducting a criminal investigation and officially operating to assist those police agencies responsible for enforcing the State's criminal laws. Vatsis was representing the State of Texas, the party in interest in a criminal prosecution. This is evident as the record indicates that after the interrogation of appellant she immediately reported his statements to law enforcement personnel.

■ As noted, the appellant was in custody for the offense of injury to a child, Vatsis as a DHR investigator was investigating the offense, and the statements elicited from appellant were in direct response to the questions propounded to him by Vatsis. Prior to the interrogation, the appellant should have been afforded the procedural safeguard provided under *Miranda*. His statements were therefore inadmissible.

It must now be determined if the introduction of appellant's statement was harmless. We will therefore remand this case to the court of appeals for a harm analysis pursuant to Tex.R.App.Pro. 81(b)(2). Accordingly, we vacate the judgment of the court of appeals and remand this cause to that court for further proceeding consistent with this opinion.

TEAGUE, Judge, concurring only in the result.

I agree with the holding in the majority opinion that the Dallas Court of Appeals, see *Cates v. State*, 748 S.W.2d 9 (Tex.App.–5th 1987), erred in sustaining the trial judge's decision to admit into evidence statements that William Curtis Cates, henceforth appellant, made to Joanna Vatsis, henceforth Vatsis, a caseworker employed by the Texas Department of Human Resources, henceforth TDHR. Therefore, I concur.

I also concur because I find that although the majority opinion does not expressly overrule this Court's majority opinion of *Paez v. State*, 681 S.W.2d 34 (Tex.Cr. App.1984), it has sufficiently damaged what was stated and held in *Paez* to the extent that *Paez* is no longer valid precedent in this area of our law.

The primary reason that I do not join the majority opinion lies in the fact that it fails to expressly hold, in big bold print, for all the world to see, that when caseworkers for TDHR and "professionals," such as school teachers, who investigate a complaint against a natural parent, the lawful guardian, or the lawful custodian of a child for committing child abuse or child neglect, they are then acting as the functional equivalent of certified peace officers, and should be held to the same standards that certified peace officers must adhere to when they interview a "suspect" to a crime. At least this kind of express holding would give caseworkers and professionals such as school teachers, nurses, doctors, and day-care employees, and other individuals, guidance and a sufficient bright line rule I believe that they could live with, and would also give our courts a rule that can easily be used in deciding whether statements by the "accused" to caseworkers or professionals, and other government employees who are not primarily charged with enforcement of the criminal laws of this State, are admissible or inadmissible evidence at the accused's trial. However, has the majority opinion, albeit implicitly, not actually approved the rule that I advocate should be adopted in this area of the law?

The majority opinion leads me to conclude that after today, notwithstanding the provisions of Chapter 34 of the Family Code, if a caseworker for TDHR or a professional, such as a school teacher, is somehow made aware that a natural parent, lawful guardian, or lawful custodian of a child is suspected of committing child abuse or child neglect, unless the caseworker or the professional is willing to assume the position of a certified gun carrying, badge wearing peace officer, and is further willing to perform like a "real life" police officer must perform when interviewing a "suspect" to a crime, that individual is "off-limits" to the caseworker

or the professional. In other words, if the caseworker or the professional at that time is acting as the functional equivalent of a certified peace officer, he or she must perform just like a certified peace officer must perform under those circumstances. But, if the caseworker adheres to what the majority opinion states and holds, he or she will not be doing the job for which he or she was employed to do, pursuant to Chapter 34 of the Family Code.[1] And there lies the dilemma for the caseworker.

I was under the impression, as Justices Stephens, Stewart, and Baker of the Dallas Court of Appeals apparently also were when they voted to approve the opinion of the Dallas Court of Appeals in *Cates v. State*, 748 S.W.2d 9 (Tex.App.–5th 1987), also see *Davis v. State*, 687 S.W.2d 78 (Tex.App.–5th 1985) (Appellant's p.d.r. refused, see *Davis v. State*, Tex.Cr.App. P.D.R. No. 0736–87, December 3, 1985), that this Court's decision of *Paez* was the final word when it comes to making the determination whether an accused's statement to a caseworker for TDHR was admissible or inadmissible evidence.

In *Paez*, this Court expressly held that as long as a case worker for TDHR, although an employee *and* an agent of the State, does not act as "an agent of law enforcement *pursuant to a police practice*," (emphasis supplied), any statement that the caseworker obtains from one of his or her "clients," who might be a suspect as a result of the caseworker's investigation in a child abuse or child neglect case, is not the subject of custodial interrogation.

*Paez* also holds that this is true even when the caseworker gives the "client" the "Miranda" warnings, and even when the "client" is then actually under arrest by the police and in custody for committing an offense that is not related either to child abuse or child neglect. In *Paez*, when the defendant made her statement to the TDHR caseworker, she was then in the custody of two uniformed policewomen in a room at a hospital, which was the functional equivalent of a regular jail cell, where she was then being held for the gunshot wounds that she had inflicted on her husband, who died as a result of the wounds she inflicted. She was then also being treated for gunshot wounds that her husband had inflicted on her. This Court ruled her statements to the caseworker were admissible evidence.

*Paez* distinguished *McCroy v. State*, 643 S.W.2d 725 (Tex.Cr.App.1982), upon which the majority opinion in this cause principally relies. *McCroy* ruled that a statement that a psychiatrist obtained from a defendant was inadmissible evidence because the evidence showed "a plan on the part of the police to use Dr. Holbrook [the pyschiatrist] as a police instrumentality in the interrogation of McCroy [the defendant] so that the statements made to Dr. Holbrook were as though made to the police themselves."

In this cause, the Court of Appeals correctly discerned the following: "A state employee must be acting as an agent of law enforcement pursuant to a police prac-

---

1. Chapter 34 of the Family Code provides, inter alia: *"Any person* having cause to believe that a child's physical or mental health or welfare may be adversely affected by abuse or neglect by a person responsible for the child's care, custody, or welfare shall report [this] in accordance with Section 34.02 of this Code." (My emphasis.) Failure to report subjects an individual to being charged and convicted of committing a Class B misdemeanor offense. See § 34.07. § 34.02 provides, inter alia, that such report shall be made to any local or state law enforcement agency, and in addition shall be made to TDHR. A professional has 48 hours in which to make an oral report and must make a written report within 5 days to a local or State law enforcement agency. In the instance of a caseworker for TDHR, that individual is a State employee who is employed to investigate cases in which either child abuse or child neglect has occurred or is presently suspected of occurring. The caseworker is mandated by statute "to make a thorough investigation promptly," ostensibly either to immediately exonerate the accused or to determine whether the situation is serious enough so that steps can be taken to remove the child to a "safe" place. Of course, part of the caseworker's investigation should consist of interviewing both natural parents or the individual responsible for the child's care, whether that person is the accused or not. If, from the investigation, the caseworker draws the conclusion that criminal charges should be filed, the caseworker shall submit his or her report to the juvenile court or the district court, as well as the appropriate law enforcement agency.

tice before the safeguards attendant to custodial interrogation come into play. *Only under these circumstances* do non-law enforcement personnel become agents of the *State* for purposes of distinguishing custodial interrogation from non-custodial interrogation." (First emphasis supplied; second in original opinion.)

In *Paez*, the caseworker, aware that her "client," the defendant, was in police custody for allegedly killing her husband, went to a hospital, where the defendant was then under formal arrest, to see the defendant, apparently to determine whether the defendant's young children, who were not identified in the opinion as to age or sex, were being taken care of. The opinion in *Paez* also does not expressly or implicitly reflect or indicate why the defendant and her husband had been the caseworker's "clients" in the past, or why the caseworker was concerned about the well-being and location of the defendant's children. As to the former, it appears that the caseworker went there because of either child abuse or child neglect that had occurred in the past. As to the latter, the opinion does not either expressly or implicitly reflect or indicate just exactly where the children were then located, or whether they were then being taken care of by friends or relatives of the family. The caseworker, however, was not acting in the form of a "police agent," nor was she part of any plan on the part of the police when she went to interview the defendant. The defendant's statements to the caseworker were ruled admissible evidence by this Court.

Thus, under *Paez*, whether or not a defendant's statement to a caseworker for TDHR is admissible evidence is determined on the basis of whether the caseworker is part of a plan by the legitimate police officials to use the caseworker to obtain incriminating statements from the accused. If such finding is supported by the evidence, the statement is inadmissible evidence; if not, it then becomes admissible evidence. But, does today's majority opinion comport with those holdings?

Under *Paez*, factors such as TDHR caseworkers are not trained or qualified to be police officers, are not certified to be police officers, do not wear a certified police officer's badge, gun, or the usual police officer's trappings, but usually conduct themselves much like bona fide police officers might act when it comes to their investigating cases involving child abuse or child neglect, even to the extent that they give the "client" the "Miranda" warnings, do not control in making the determination whether a defendant's statement to a caseworker is admissible evidence. Under *Paez*, it is only when the caseworker is "acting as an agent of law enforcement pursuant to a police practice before the safeguards attendant to custodial interrogation come into play. Only under those circumstances do non-law enforcement personnel become agents of the State for purposes of distinguishing custodial interrogation from noncustodial interrogation." Thus, under *Paez*, even if the caseworker looks, walks, and talks like a "real life" police officer, unless the caseworker is then acting on behalf of a legitimate police agency when he or she interviews the "client," for purposes of "custodial interrogation," the caseworker is not a police officer or the functional equivalent of a police officer, but is then only a social worker, and any statements obtained from the "client" become admissible evidence in the trial of the defendant, no matter what offense he is charged with committing, or where he might be situated when the statements were obtained.

In this instance, it is undisputed that Vatsis, the TDHR caseworker, was not a "police officer," but was simply a TDHR caseworker doing the job that she was assigned to do by TDHR, that is, investigating a case that indicated that appellant may have unlawfully inflicted serious bodily injury on his natural child. Vatsis unequivocally testified that when she spoke with appellant she was not acting as a police officer and was not acting on behalf of some legitimate police agency, but was only acting as a social worker doing investigative work for use in a possible civil court proceedings involving the parent-child relationship. Under the holding in *Paez*, why

aren't the statements Vatsis obtained from appellant admissible evidence?

The facts of this cause show that Vatsis became involved when someone notified TDHR that a caseworker should investigate the condition of the alleged victim, who was appellant's natural child, which Vatsis did by going to the residence where the child was located. Soon thereafter, Vatsis, with the child, who then appeared to have been seriously injured, and the child's mother drove, not to a hospital, but to Vatsis' office. Appellant was to follow them to the office. However, he did not show up at Vatsis' office. By the time the child arrived at Vatsis' office, the child was in extreme pain. An ambulance was summoned and the child was transported to a hospital for treatment. Legitimate police were notified and police officers soon arrived at the hospital, after which appellant was arrested, but at another location, for allegedly committing the offense of unlawfully causing injury to a child. Vatsis informed the mother that a representative of TDHR would be filing a civil suit in order to gain lawful custody of the child, which lawsuit was subsequently filed.

Thereafter, Vatsis visited appellant in the Dallas County Jail. Appellant was then incarcerated on the injury to a child charge. Vatsis testified that her purpose in going to the jail to visit with appellant was to interview appellant and obtain as much information as she could about what had happened to the child so that she could prepare for a possible civil suit that might terminate, either temporarily or permanently, appellant's right to have custody of the child, and, if custody was terminated, to make decisions on what conditions, if any, might be placed on appellant's later visiting with his child.

Vatsis' testimony makes it clear to me that she was not at the jail for law enforcement purposes; that she was not there acting as a bona fide law enforcement official; and that she was not there at the request of any legitimate law enforcement officer. Under *Paez*, why aren't the incriminating statements Vatsis obtained from appellant admissible evidence?

During the interview that Vatsis had with appellant, he made very damaging and incriminating statements to Vatsis, who did not give him the "Miranda" warnings but told him that he did not have to talk with her about how the child's injuries had occurred or had been inflicted. Although Vatsis told appellant that he did not have to talk with her, when appellant expressed a desire to keep his family together, Vatsis told him that was commendable but that it would be harder for her to help him if he did not talk to her. Appellant thereafter agreed to be interviewed by Vatsis. Vatsis asked appellant to explain the pending criminal charge against him, after which appellant made the incriminating admissions to Vatsis.

The court of appeals concluded from Vatsis' testimony that Vatsis "was not acting as an agent of law enforcement during her conversation with appellant; therefore, appellant's admissions to [Vatsis] did not stem from custodial interrogation. Consequently, there was no need for the requirements of article 38.22 or *Miranda* to be met prior to admission of her testimony. *See Paez*, 681 S.W.2d at 38." The record clearly supports this conclusion, and under *Paez* the statements should have been admissible evidence.

This Court's majority opinion, however, concludes from Vatsis' testimony that Vatsis was "operating as an agent of law enforcement in the State of Texas" when she obtained appellant's statements. This conclusion flows from the majority's following reasons: (1) when Vatsis interviewed and spoke with appellant when he was in jail, appellant was then the "central figure in a criminal investigation concerning child abuse"; (2) appellant "had been arrested for the present offense"; (3) appellant "was in the Dallas County Jail at the time of the interview"; (4) appellant's arrest had resulted from information provided by [Vatsis] as well as police interviews of the child and the examining medical doctor"; (5) "the questions propounded [by Vatsis] to [appellant] were calculated to evoke incriminating responses relevant to the pending charges"; (6) "[Vatsis] was

conducting a criminal investigation and officially operating to assist those police agencies responsible for enforcing the State's criminal laws"; (7) "[Vatsis], after interviewing appellant,] immediately reported [appellant's] statements to the authorities"; and (8) "[Vatsis' self-serving declarations, namely, that she was not a law enforcement officer and that she was not a member of the law enforcement community] are totally insufficient to provide us with a basis for a decision [that she was not 'acting as an agent of law enforcement pursuant to a police practice before the sageguards attendant to custodial interrogation come into play']."

I ask: Isn't this the same type of reasoning that the Fort Worth Court of Appeals used in its unpublished opinion of *Paez*, see *Paez v. State*, Tex.App.–2nd, No. 2–83–263–CR, November 9, 1983), when it ruled that statements that the defendant in that cause made to the TDHR caseworker were inadmissible evidence because they were the result of "custodial interrogation?" But, didn't this Court reject that kind of reasoning in its decision of *Paez*, when it reversed the judgment of the Fort Worth Court of Appeals?

Also, isn't this the same kind of reasoning that the Dallas Court of Appeals used in *Davis* to reject the same kind of complaint appellant makes in this cause? In *Davis*, the child was taken to Parkland Memorial Hospital by the defendant and others. Examination revealed that the child was suffering from severe malnutrition, due to child abuse, child neglect, or injury to the child by the defendant, which caused the treating physicians to contact Dallas County Child Welfare so that it could investigate possible civil or criminal violations of the law. A TDHR caseworker commenced investigation and interviewed the defendant, who was then certainly in an "accusatory" stage of the process. As in this cause, the caseworker testified that the reason she conducted the interview was to assist her in her investigation whether or not to initiate civil proceedings to remove the victim from the defendant's custody, and was not done for criminal law purposes. The court of appeals concluded:

"On the basis of this evidence, the interview was not a 'custodial interrogation' which required *Miranda* warnings. Cf. *Payne v. State*, 579 S.W.2d 932 (Tex.Cr. App.1979) (holding general questioning by probation officer not a 'custodial interrogation'.)" (81). As previously pointed out, this Court refused the defendant's petition for discretionary review in *Davis*, thus implicitly approving the holding of the court of appeals.

Just recently, in *Wicker v. State*, 740 S.W.2d 779 (Tex.Cr.App.1987), a majority of this Court, which amazingly did not even mention *Paez* in its opinion, although the issue involved facts which concerned another TDHR caseworker who had interviewed a "client", upheld similar statements that the defendant in that cause had made to the caseworker. The issue on appeal concerned the admissibility of both oral statements that the "client" had made to the caseworker as well as a written statement that the defendant gave the caseworker. Both statements were incriminating. At that time, the defendant was not under arrest or in lawful police custody. A copy of the written statement eventually reached the District Attorney's Office. Charges were thereafter filed against the defendant. In upholding the admissibility of the defendant's statements to the caseworker, the majority opinion concluded that when the defendant gave his written statement to the caseworker, he was not "in custody." The majority opinion also concluded: "Assuming arguendo that [the caseworker] was an agent of the State (footnote deleted), we are unable to distinguish this case from *Oregon v. Mathiason*, supra, [429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) ] wherein the Supreme Court concluded that no custodial interrogation had occurred ... [W]e hold that appellant was not in custody when he made his oral statements [sic] to [the caseworker]. The statement [sic] was admissible pursuant to Article 38.22, supra." (787).

Under *Paez*, I believe that a rational and reasonable mind can easily conclude that, when it comes to a TDHR caseworker who interviews an individual who is then sus-

pected of committing either child neglect or child abuse, the individual, either before or after he has been formally charged with and/or arrested for committing some child abuse or child neglect offense, there is no requirement for the case-worker to give the "client" the *Miranda* warnings *unless* the case-worker is then acting as an agent of a legitimate law enforcement agency *and* is also acting pursuant to a legitimate police practice. In this instance, there is no evidence that Vatsis falls into either category; in fact, all of the evidence on this point is undisputed. Under *Paez*, the evidence in this cause is clearly sufficient to support the finding that when Vatsis interviewed appellant when he was incarcerated she was not acting as an agent of any legitimate law enforcement agency and was not acting pursuant to a legitimate police practice, but was simply acting as a caseworker for TDHR is expected to act as a matter of statutory law. Therefore, under *Paez* and *McCrory*, notwithstanding that appellant was then incarcerated in jail, appellant's admissions to Vatsis during the interview did not stem from custodial interrogation. Consequently, under *Paez*, there was no need for the requirements of Art. 38.22 or *Miranda* to be satisfied prior to the admission of her testimony into evidence before the jury.

I pause to briefly point out that *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), is clearly inapplicable to the issue because there is nothing in the record before us that might reflect or indicate that the interview that Vatsis had with appellant was court ordered or that appellant's conversation with Vatsis was not voluntary.

As previously pointed out, since *Paez*, everytime this Court has been given the opportunity to restrict or overrule what it stated and held in *Paez*, concerning admitting into evidence a defendant's statements to a TDHR caseworker, it has declined to do so.

How should TDHR caseworkers, who investigate child abuse or child neglect cases, view today's majority opinion? It appears to me that under today's majority opinion,

if the caseworker is somehow made aware that the "client" is "the central figure in a criminal investigation concerning child abuse [or child neglect]", and charges have been or might be filed against the "client" for allegedly committing that offense, unless the caseworker is willing to assume the position of a certified, gun carrying, badge wearing police officer, and is further willing to perform like a real police officer must perform when he is interviewing a "suspect," the "client" is "off limits" to the caseworker. If the caseworker is not willing to assume the functional equivalent of a real life police officer, then he or she will be deemed to be acting as an agent of law enforcement pursuant to a police practice, even if he or she testifies, and such testimony is neither contradicted nor disputed, that he or she was not then acting as an agent of a law enforcement agency pursuant to a police practice. Also see and compare *Commonwealth v. Ramos*, 367 Pa.Super. 84, 532 A.2d 465 (1987), which is a "white horse" case that supports the appellant's contention.

I conclude that this is such a nebulous standard that it amounts to no standard at all in guiding caseworkers for TDHR or teachers, nurses, doctors, and day-care employees, who come within the statute, as to what they should do when confronted with a similar situation. All of these individuals, when they have cause to believe that a child has been or may be abused or neglected, are required to make an oral report to a local or State law enforcement agency within 48 hours after they first suspect that the child has been or may be abused or neglected. Teachers, like TDHR caseworkers, are employees of the State. Let us assume that a schoolteacher has cause to believe that one of her students has been or may be abused or neglected by the father of the child. However, the teacher has questions about her belief. She confronts the father about her suspicions. During the interview, she concludes that she really did not have cause to believe that her student had been or may be abused or neglected. Now that the teacher's suspicions have been favorably resolved to the benefit of the father, is the teacher still

required to report her former suspicions as well as what she learned or concluded from the interview with the father? What if during the interview the father makes incriminating statements to the school teacher? Unquestionably, the teacher is required, as a matter of law, to report this to a local or State law enforcement agency. Will the statements that the father made to the school teacher be admissible in court?

Rather than leave TDHR caseworkers and professionals such as school teachers grasping what they must do under our law, when either the natural parent or lawful guardian of a child is suspected of being guilty of child abuse or child neglect, I would hold that if it can be concluded that the caseworker or the professional is acting as the functional equivalent of a certified peace officer, then that individual must act just like a real police officer must act under the same or similar circumstances, and will be held to the same standards that appellate courts apply to "real life" police officers.

I find that the majority opinion has broad implications. In this instance, we are only dealing with a TDHR caseworker who interviewed a natural parent who was then in jail after having been charged with committing a criminal offense on his natural child. However, the majority opinion can be applied to situations involving probation and parole officers, and other State employees, and perhaps non-State employees, who are not primarily charged with enforcement of a criminal statute, who interview their "clients" who are then "in custody." Also see Ringel, *Searches and Seizures: Arrests and Confessions,* § 26.5 and 26.05(b).

Given what the majority opinion states and holds, as well as what it does not state and hold, I say to governmental employees, such as TDHR caseworkers, "professionals," as that term is defined in the Family Code, probation officers, parole officers, welfare fraud investigators, and any other government personnel who are not primarily charged with enforcement of the criminal statutes: Unless you are willing to perform just like a certified peace officer must perform under like or similar circum-

stances, "clients" who are then incarcerated in a jail facility should not be interviewed by you if there is the possibility that the State might later attempt to have admitted into evidence statements the "client" makes to you.

CAMPBELL, Judge, concurring.

I wholeheartedly agree with the majority treatment of the core issue in this case. The facts in the instant case are clearly distinguishable from those in *Paez v. State,* 681 S.W.2d 34 (Tex.Crim.App.1984). As has been stated by an author with some considerable knowledge of Anglo–American jurisprudence:

> "The prior decided case stands only for a point actually necessary to the judgment. Anything else in the opinion is dictum. Even if the rule carefully laid down would lead to the decision in the case and was unmistakably meant to, the case is still 'distinguishable' if you can distinguish it on either the facts or the issue." Llewellyn, *Commercial Transactions,* pp. 16–17 (1946)."

I write solely for the purpose of examining the other "concurring" opinion in this case. What is it that Judge Teague "concurs" in? What legal principle or principles contained in the majority opinion are embraced by his "concurring" opinion? Does he find the *Paez* decision distinguishable from that in the instant case? No, indeed! Does Judge Teague conclude that the holding in *Paez* governs the disposition of the instant case? Yes indeed, he does! In fact Judge Teague concludes that the record clearly supports the Court of Appeals in its conclusion, "and under *Paez* the statements should have been admissible evidence." Teague, J., Concurring, slip op. at 7. And yet the majority opinion finds that appellant's statements were inadmissible. Does this portend that Judge Teague finds comfort in Presiding Judge McCormick's Dissenting Opinion? Nay, nay! Methinks Judge Teague finds succor (along with the appellant) in the concluding paragraph of the majority opinion. With these comments, I join the majority opinion.

McCORMICK, Presiding Judge, dissenting.

Believing that the Court of Appeals was completely correct, I would vote that the petition in this cause was improvidently granted.

I must, therefore, dissent to the judgment of this Court.

DAVIS and WHITE, JJ., join this dissent.