IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1270-04






TRACY HARM, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FOURTEENTH COURT OF APPEALS


GRIMES COUNTY





 Johnson, J., delivered the opinion of the Court in which Meyers, Price,
Womack, Keasler, Hervey, Holcomb, and Cochran, JJ., joined. Keller, P.J.,
concurred in the result.


O P I N I O N 



 A Grimes County grand jury indicted appellant for the second-degree offense of indecency
with a child pursuant to Tex. Penal Code § 21.11. The state presented evidence at the guilt phase
of trial that, during the year 2000, appellant and her husband had forced the complainant, A.N., to
watch R-rated or pornographic movies with them, after which appellant and her husband engaged
in sexual contact with A.N., who was in the second grade at the time of these incidents. A.N. was
staying with appellant and her husband while A.N.'s mother recuperated from surgery. A jury
convicted appellant of indecency with a child and sentenced her to 12 years' confinement in the
Texas Department of Criminal Justice-Correctional Institutions Division (TDCJ-CID). 

 Appellant appealed, asserting that the trial court erred in denying her motion for a new trial,
which was based on the ground that the state had failed to disclose evidence favorable to her, as is
required by Brady v. Maryland, 373 U.S. 83 (1963). Harm v. State, 2004 Tex. App. LEXIS 6156,
No. 14-03-00791-CR (Tex. App-Houston [14th Dist.], delivered July 13, 2004, unpublished). 
Specifically, appellant asserted that the state failed to disclose Child Protective Services (CPS)
records that allegedly indicated that, in the past, A.N. had made unfounded allegations of sexual
abuse and had engaged in inappropriate sexual behavior. 

 The court of appeals, relying on Banks v. Dretke (1) and Strickler v. Greene, (2) found that no
evidence existed to show: (1) the state had, or was aware of, the CPS records in question before they
were provided directly to appellant's counsel by CPS after trial; or (2) that "the CPS caseworker
[who testified] or his office investigated, or was in any other way involved in, these allegations
concerning appellant." The court of appeals found, on the contrary, that the CPS caseworker told
both the state and appellant before trial that no such records existed. The court of appeals also
concluded that appellant had failed to demonstrate that anyone acting on the state's behalf either
willfully or inadvertently suppressed the records. Thus, the trial court had not abused its discretion
in denying appellant's motion for a new trial. Appellant then petitioned for discretionary review,
reasserting in her sole ground for review (3) that, because the state failed to disclose Brady material,
the court of appeals erred in affirming the trial court's denial of her motion for a new trial. We
affirm the judgment of the court of appeals.

 In Brady, the United States Supreme Court concluded that the suppression by the prosecution
of evidence favorable to a defendant violates due process if the evidence is material either to guilt
or punishment, without regard to the good or bad faith of the prosecution. Brady, 373 U.S. at 87;
Wyatt v. State, 23 S.W.3d 18, 27 (Tex. Crim. App. 2000). Appellant must satisfy three requirements
to establish a Brady violation: (1) the state suppressed evidence; (2) the suppressed evidence is
favorable to defendant; and (3) the suppressed evidence is material. Little v. State, 991 S.W.2d 864,
866 (Tex. Crim. App. 1999); Thomas v. State, 841 S.W.2d 399, 402-03 (Tex. Crim. App.
1992)(citing Moore v. Illinois, 408 U.S. 786 (1972)). Incorporated into the third prong, materiality,
is a requirement that defendant must be prejudiced by the state's failure to disclose the favorable
evidence. Banks, 540 U.S. at 691.

 The Supreme Court subsequently extended Brady and held that the duty to disclose such
evidence is applicable even if there has been no request by defendant, (4) and that the duty to disclose
encompasses both impeachment and exculpatory evidence. (5) This duty also requires disclosure of
favorable evidence known only to the police. Consequently, prosecutors have a duty to learn of
Brady evidence known to others acting on the state's behalf in a particular case. Kyles v. Whitley,
514 U.S. 419, 437-38 (1995). It is irrelevant whether suppression of the favorable evidence was
done willfully or inadvertently. Strickler, 527 U.S. at 281-82.

 In the instant case, the trial-court record indicates that appellant issued to a CPS caseworker,
Brian Pinero, a subpoena duces tecum that ordered him to furnish to her all CPS records relating to
A.N. and her family, as well as records involving: 1) a previous CPS investigation begun after
appellant's daughter complained of abuse; and 2) records of a second unrelated victim who allegedly
had been abused by appellant and her husband. Immediately before the jury panel was sworn in,
Pinero indicated in open court that the only records maintained by CPS involved the second
unrelated victim and that the CPS office did not have any records pertaining to A.N. or her family. 
The following afternoon, after the trial had ended, Pinero faxed to appellant's counsel twenty-two
pages of documents from CPS files that pertained to A.N. and her family. 

 The state contends that it neither possessed nor was aware of the CPS records sent to
appellant's counsel after the trial. The state also asserts that it was not aware of the existence of the
records until appellant's counsel telephoned after the trial and that the state did not possess the
records until appellant's counsel filed a motion for a new trial and attached the documents to the
motion. 

Analysis

 A Brady violation occurs when the state suppresses, willfully or inadvertently, evidence
favorable to appellant. There can be no Brady violation without suppression of favorable evidence. 
While appellant correctly points out that the state is prohibited from suppressing evidence and
secreting witnesses capable of establishing her innocence, (6) "Brady and its progeny do not require
prosecuting authorities to disclose exculpatory information to defendants that the State does not have
in its possession and that is not known to exist." Hafdahl v. State, 805 S.W.2d 396, 399 (Tex. Crim.
App. 1990)(citing Thompson v. State, 612 S.W.2d 925, 928 (Tex. Crim. App. 1981)). The state's
duty to reveal Brady material to the defense attaches when the information comes into the state's
possession, whether or not the defense requested the information. Thomas, 841 S.W.2d at 407. 
However, the state is not required to seek out exculpatory evidence independently on appellant's
behalf, (7) or furnish appellant with exculpatory or mitigating evidence that is fully accessible to
appellant from other sources. Jackson v. State, 552 S.W.2d 798, 804 (Tex. Crim. App. 1976).

 The District Attorney's Office in Grimes County maintained an open-file policy, which
generally satisfies the prosecution's duty to disclose exculpatory evidence. "[T]he prosecutor is not
required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the
accused that, if suppressed, would deprive the defendant of a fair trial . . .." Bagley at 675 (footnote
omitted). Although appellant's counsel reviewed the state's files on at least two separate occasions,
according to the trial-court record, the records in question were not contained in those files. In this
case, it appears that appellant came into possession of the CPS records before the state did.

 While the trial-court record seemingly indicates that the state neither willfully nor
inadvertently suppressed evidence favorable to appellant, appellant urges this Court, in the
alternative, to find that CPS acted as an agent of the state, thus, imputing knowledge of the records
to the prosecution. Kyles, 514 U.S. at 437. 

 Our law recognizes that different types of state employees serve different roles. CPS is
charged with protecting the welfare and safety of children in the community. (8) This duty may entail
the investigation of child-abuse claims, but that alone does not automatically transform CPS case
workers into law-enforcement officers or state agents. Cates v. State, 776 S.W.2d 170, 171-72 (Tex.
Crim. App. 1989). While we have held that CPS case workers may be law enforcement officers (9) or
state agents (10) in some circumstances, an examination of the entire record is required to determine
whether a CPS employee was a state agent in a given situation. Id. at 172. 

 The state relies on our opinion in Wilkerson v. State (11) to conclude that CPS was not acting
as a state agent in this case. Wilkerson is distinguishable from the current case in that it examined
the narrow issue of whether CPS was a state agent when conducting a custodial interrogation and
the extent to which Miranda warnings were required in such situations. Id. Here, the tardily
produced reports were created in the course of an non-criminal investigation that was unrelated to
appellant, but within the duties of CPS to protect the welfare and safety of the children of Texas. 
In addition, the CPS reports significantly predate the allegations against appellant, thus CPS could
not have been working with the prosecution or at its behest.

 Even if we were to assume, as appellant suggests, that CPS acted in a law-enforcement
capacity or as a state agent and that it willfully or inadvertently concealed the records, appellant's
claims still must fail because she is unable to satisfy the remaining requirements necessary to
establish a Brady violation. A careful review of the tardy CPS records indicates that they are neither
favorable nor material to appellant's case. 

 Favorable evidence is any evidence that, if disclosed and used effectively, may make a
difference between conviction and acquittal and includes both exculpatory and impeachment
evidence. Thomas, 841 S.W.2d at 404 (citing Bagley, 473 U.S. at 676). Exculpatory evidence may
justify, excuse, or clear the defendant from fault, while impeachment evidence is that which disputes
or contradicts other evidence. Id. at 404. The CPS records that pertain to A.N. and her family, and
which CPS provided to appellant only after her trial, stem from incidents that were alleged to have
occurred in 1996 and 1998, well before appellant allegedly committed this offense. The records are
unrelated to the investigation of appellant in this case and do not mention her or her husband as
possible perpetrators of sexual abuse against A.N. On the contrary, A.N.'s mother is listed as the
alleged perpetrator, even though neither A.N. nor her sisters made outcry statements. Appellant cites
portions of these CPS records and argues that those portions indicate that A.N. made unsubstantiated
claims of past sexual abuse and that she had venereal disease. Appellant then infers from these
records that A.N. is untruthful, that she engaged in inappropriate sexual behavior, and that this
information is not only favorable to appellant, but also sufficient to result in appellant's acquittal had
it been presented at trial. 

 Appellant's reliance on A.N.'s prior accusation of abuse against her sister as impeachment
evidence is misplaced. The CPS file showed a third-hand hearsay report that an unidentified person
had inserted an object into A.N.'s vagina. A subsequent medical examination, however, revealed
no signs of sexual abuse, and A.N. admitted that she had fabricated the allegations. Such testimony
is inadmissible multiple hearsay under Tex. Evid. R. 802 and does nothing to exculpate appellant. 
The impeachment value of such a statement is also limited because it does not fall within the well-delineated categories of impeachment evidence. (12) Moreover, the trial-court record shows that
appellant did not call any witnesses to establish A.N.'s reputation for truthfulness. Appellant's
reliance on complainant's alleged infection with venereal disease is also misplaced. A thorough
examination of the records indicates that it was A.N.'s older sister, A.W., not A.N. , who was
suspected of having venereal disease. The records associated with the 1998 CPS investigation name 
A.N.'s sisters, not A.N., as possible sexual-abuse victims. A.N.'s sisters told CPS that they were
abused at school. CPS interviewed A.N. during this time, but she, unlike her sisters, indicated that
she had not been sexually abused. Appellant also asserts that the CPS records demonstrate that A.N.
acted out sexually with her sisters. (13) This evidence, however, is neither exculpatory nor useful for
impeachment purposes and indicates only that A.N. may have observed inappropriate behavior or
may have been previously abused. Thus, appellant fails to show that the CPS records are favorable
to her defense. 

 Appellant also fails to show that the records are material. Evidence is material if there is a
"reasonable probability that, had the evidence been disclosed to the defense, the result of the
proceeding would have been different." Ex parte Kimes, 872 S.W.2d 700, 702 (Tex. Crim. App.
1993)(quoting Bagley, 473 U.S. at 676). A reasonable probability is one that is sufficient to
undermine confidence in the outcome of the trial. Id. Materiality is determined by examining the
alleged error in the context of the entire record and overall strength of the state's case. Thomas, 841
S.W.2d at 404-05 (citing Agurs, 427 U.S. at 113). The state's case in this instance rested in large
part on the testimony of A.N., but both A.N.'s mother and Deputy Christine Larner of the Grimes
County Sheriff's Department's sexual-offenses investigation unit gave testimony that corroborated 
A.N.'s version of events. 

 After examining the entire trial-court record, we conclude that the court of appeals did not
abuse its discretion in denying appellant's motion for a new trial. The information contained in the
tardy CPS records was not favorable to appellant, nor was there any evidence to suggest that the
result of the proceedings against appellant would have been different if the CPS records had been
disclosed to appellant prior to trial. 

 We affirm the judgment of the court of appeals.


 Johnson, J.

En banc

Delivered: January 25, 2006

Publish
1. 540 U.S. 668 (2004).
2. 527 U.S. 263 (1999).
3. "Whether the trial court and the court of appeals abused their discretion in erroneously denying
appellant's motion for new trial. The prosecutor and CPS worker failed in their affirmative duty to disclose evidence
favorable to the accused and by that evidence being material, there is a reasonable probability had the evidence been
disclosed when subpoenaed, the result of the proceedings may have been different. The failure to disclose said
evidence results in a violation of the XIV Amendment."
4. United States v. Agurs, 427 U.S. 97 (1976).
5. United States v. Bagley, 473 U.S. 667 (1985).
6. See Tex. Code Crim. Proc. art. 2.01.
7. Bagley, 473 U.S. at 675.
8. See Tex. Fam. Code § 264.002(a) (stating that the Department of Protective Regulatory Services - CPS
shall "(1) promote the enforcement of all laws for the protection of abused and neglected children; and (2) take
initiative in all matters involving the interests of children where adequate provision has not already been made").
9. Cates, 776 S.W.2d at 172-74.
10. Id.
11. 173 S.W.3d 521 (Tex. Crim. App. 2005).
12. See Tex. Evid. R. 608 (evidence of character and conduct of a witness) and Tex. Evid. R. 609
(impeachment by conviction of a crime).
13. The file also contained an allegation that A.N. had inserted an object into her younger sister's vagina.