David Eugene PERKINS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–88–01034–CR.

Court of Appeals of Texas,
Dallas.

Oct. 25, 1989.

Donald R. McDermitt, Plano, for appellant.

Tom O'Connell, Randall A. Blake, McKinney, for appellee.

Before HOWELL, ROWE and KINKEADE, JJ.

## OPINION

ROWE, Justice.

David Eugene Perkins appeals his conviction for aggravated sexual assault. Appellant was found guilty in a bench trial, and his punishment was assessed at twenty years' confinement. In seven points of error, appellant contends that (1) certain oral and written statements which he made should have been suppressed, (2) a video-taped interview of the minor complainant was improperly admitted, (3) evidence was insufficient to corroborate an extrajudicial confession, (4) evidence was insufficient to prove the date of the alleged offense, (5) his motion for instructed verdict was improperly overruled, (6) findings of fact and conclusions of law concerning the voluntariness of his confessions were not properly entered, and (7) testimony concerning his competency and sanity was improperly admitted. We disagree with appellant's contentions and affirm his conviction.

Because several of appellant's points of error directly or indirectly attack the finding of guilt for the reason that support for such finding cannot be predicated upon disclosures in either of two extrajudicial confessions, we first consider what the record shows about the history of those confessions and other pertinent facts. In examining the record, we view the evidence in the light most favorable to the verdict. *See Lopez v. State,* 630 S.W.2d 936, 940 (Tex.Crim.App. [Panel Op.] 1982). We are also bound by the rule that, in a suppression hearing, the trier of fact is the sole judge of the weight and credibility of the

witnesses and may believe or disbelieve all or any part of any witness's testimony. *Williams v. State,* 692 S.W.2d 671, 676 (Tex.Crim.App.1984); *Waller v. State,* 648 S.W.2d 308, 311 (Tex.Crim.App.1983) (op. on reh'g). We cannot disturb the trial court's findings regarding admissibility of a confession if they are supported by the record; if they are so supported, our only inquiry is whether the trial court properly applied the law to the facts. *Burdine v. State,* 719 S.W.2d 309, 318 (Tex.Crim.App. 1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Johnson v. State,* 698 S.W.2d 154, 159 (Tex.Crim.App. 1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986).

The complainant in this case was a female child who was eight years old at the time of the offense and nine years old at the time of trial. She is appellant's niece on his brother's side. Appellant has another niece named Emily who is the daughter of his sister. Appellant lived for a while with his sister in Denton County, Texas, and later lived with his brother in Collin County, Texas. Appellant sometimes stayed with his parents while they lived in Collin County at 1011 Brown Street, Wylie, Texas.

The last count of the indictment in question charged that on or about November 7, 1987, in Collin County, appellant did "intentionally and knowingly cause contact with the female sexual organ of [the complainant], a child then younger than fourteen (14) years of age and not the spouse of the defendant by means of the defendant's mouth...." Appellant was also under indictment for aggravated sexual assault of Emily and for indecency with a child involving Emily. The three causes were tried together.

On December 29, 1987, Ed Snead, a detective in the Wylie Police Department, was told by the father of Emily that his daughter had been sexually abused by appellant. Snead referred the matter to Wanda Gaskin of the Department of Human Services (DHS) for investigation. On December 30, Gaskin conducted videotaped interviews of Emily and the complainant. Gaskin also questioned the parents of both nieces. Both nieces reported sexual contact with appellant. The complainant stated in her videotaped interview that appellant had penetrated her vagina with his finger and with his tongue. After the interviews, Gaskin telephoned appellant and asked him to come see her the next day to talk about the family's disclosures. On December 31, while at the DHS office, appellant wrote down a ten line "Voluntary Statement (Not Under Arrest)" detailing acts of sexual abuse against Emily. He ended his account by reporting that "[the complainant] was far less involved and shared very little at all of the same companionship." Gaskin immediately reported the results of her interviews to Snead, who prepared a probable cause affidavit the same day concerning appellant's assaults against Emily. On January 5, 1988, Snead presented this affidavit to a magistrate and obtained a warrant for appellant's arrest. Snead alerted David Waldschmidt, a criminal investigator in the Collin County sheriff's office, about this outstanding warrant.

While appellant was present, Gaskin also talked by phone with Waldschmidt on December 31 about appellant's sexual abuse of his nieces. While Gaskin and Waldschmidt were talking, appellant agreed to go see Waldschmidt. On January 5, he visited Waldschmidt. After being given standard written and oral *Miranda* [1] warnings, appellant gave a more detailed statement (which was reduced to writing) about his sexual activity with both Emily and the complainant, specifying that much of it occurred while he lived with his parents at 1011 Brown Street in Wylie. As to the complainant, he confessed that "[w]hile on Brown St[.,] I performed oral sex to [the complainant] and penetrated her vagina with my finger simulating intercourse." After taking this confession, Waldschmidt arrested appellant pursuant to the outstanding warrant.

After a jury had determined that appellant was competent to stand trial, appellant filed a motion to suppress his oral and

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.      1602, 16 L.Ed.2d 694 (1966).

written statements. Because appellant waived a jury trial for the remaining proceedings, the trial judge heard the evidence on this motion at the same time that he heard the evidence on guilt. After hearing testimony from Gaskin, Snead, and Waldschmidt, the trial judge concluded that the statement given to Waldschmidt was a product of custodial interrogation and was voluntarily made by appellant after appropriate warnings as to the consequences had been given. Accordingly, the motion to suppress was overruled. The trial court granted appellant's motion for instructed verdict in the two causes involving Emily. Appellant's motion for an instructed verdict in the case involving the complainant was overruled, and appellant was found guilty as charged in the last count of the indictment.

In his first point of error, appellant contends that the trial court erred in denying his motion to suppress oral and written statements made by him to Gaskin and Waldschmidt. Appellant's argument concerning suppression of the two confessions focuses on his interview with Gaskin. He contends that Gaskin was an agent of law enforcement who was obliged to give him the constitutionally required *Miranda* warnings. *See Cates v. State,* 776 S.W.2d 170, 172–74 (Tex.Crim.App.1989). Although Gaskin gave some warnings, these are characterized as being far from a functional equivalent of *Miranda* warnings sufficient to validate the first confession. Appellant further maintains that the second confession given to Waldschmidt was inadmissible as "fruit of the poisonous tree." He argues that it would be reasonable to assume that once he had "told all," it then mattered little, if any, if he made further statements. Appellant contends that his second confession was therefore not freely and voluntarily given.

We determine that we need not decide whether the first confession was improperly admitted unless we first conclude that the second confession was indeed "fruit of the poisonous tree." We note that appellant was convicted only of aggravated sexual assault of the complainant, and only the second confession contained detailed infor-mation regarding sexual activity with the complainant. We assume for the purposes of this discussion that Gaskin did plant a poisonous tree; however, unless the confession to Waldschmidt was the fruit of that tree, it suffers no infirmity requiring its exclusion.

■ Under the "fruit of the poisonous tree" doctrine, evidence derived directly or indirectly from illegal governmental activity is excluded as trial evidence. *See Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963); *Crosby v. State,* 750 S.W.2d 768, 780 (Tex.Crim. App.1987), *cert. denied,* — U.S. ——, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988). However, not all evidence is "fruit of the poisonous tree" even if it would not have come to light but for the illegal activity. Allegedly tainted evidence is admissible if the connection between the illegal activity and the means through which a confession was secured has become so attenuated as to dissipate the taint. Thus, the question arises as to whether, assuming the existence of the primary illegality, the evidence allegedly tainted has been obtained by exploitation of that illegality or, instead, by means sufficiently distinguishable so as to be purged of the primary taint. *See Wong Sun,* 371 U.S. at 487–88, 491, 83 S.Ct. at 417, 419; *Starkey v. State,* 704 S.W.2d 805, 810 (Tex.App.—Dallas 1985, pet. ref'd, untimely filed). To be admissible, statements made by an accused must be sufficiently an act of free will so as to purge the primary taint. Whether the taint has been purged must be determined from the facts of each case. The relevant factors to be considered include the temporal proximity of the illegal activity and the confession, the presence of intervening circumstances, and the purpose and flagrancy of the official misconduct. *See Brown v. Illinois,* 422 U.S. 590, 602, 603–04, 95 S.Ct. 2254, 2261, 2261–62, 45 L.Ed.2d 416 (1975); *Wicker v. State,* 667 S.W.2d 137, 141 (Tex.Crim.App.), *cert. denied,* 469 U.S. 892, 105 S.Ct. 268, 83 L.Ed.2d 204 (1984); *Autry v. State,* 626 S.W.2d 758, 764 (Tex.Crim.App.), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982); *Starkey,* 704 S.W.2d at

810. The prosecution has the burden of proving attenuation and admissibility. *Brown*, 422 U.S. at 604, 95 S.Ct. at 2262; *Starkey*, 704 S.W.2d at 810.

In this case, a period of five days elapsed between the time of appellant's interview with Gaskin and his confession to Waldschmidt. During that time, he was not in custody and therefore had the opportunity to consult with anyone with whom he might have chosen to confer. These facts weigh in favor of admissibility of the second confession. *See Wicker*, 667 S.W.2d at 141. There is no evidence of purposeful or flagrant misconduct by Gaskin; in fact, the question of whether a DHS worker investigating sexual abuse complaints was required to give *Miranda* warnings was unsettled at the time. *See Cates v. State*, 748 S.W.2d 9 (Tex.App.— Dallas 1987), *rev'd*, 776 S.W.2d 170 (Tex. Crim.App.1989). Moreover, Gaskin was required by law to report her findings, and she should not be faulted for having done so. *See* TEX. FAM. CODE ANN. §§ 34.01, 34.012, 34.02 (Vernon 1986 & Vernon Supp. 1989). These factors also weigh in favor of admissibility. *See Starkey*, 704 S.W.2d at 811. An additional intervening circumstance is the fact that appellant was given oral and written *Miranda* warnings prior to his second confession. Although *Miranda* warnings alone are not sufficient to attenuate taint, they are an important factor in determining whether a confession was obtained by the exploitation of the prior illegal activity. *Brown*, 422 U.S. at 602–03, 95 S.Ct. at 2261; *Starkey*, 704 S.W.2d at 811.

Appellant also argues that the second confession was involuntary and inadmissible because it is reasonable to assume that once he had "told all," it would matter little, if any, if he made further statements. Appellant is forced to rely on this supposedly reasonable *assumption* because there is no evidence in the record directly supporting his reasoning. Courts have not been persuaded by this argument that later confessions are suspect because the cat has already been let out of the bag by means of the initial confession. *See, e.g., United States v. Bayer*, 331 U.S. 532, 540–41, 67 S.Ct. 1394, 1398, 91 L.Ed. 1654 (1947); *Autry*, 626 S.W.2d at 765. In the words of the United States Supreme Court:

> Of course, after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good. In such a sense, a later confession always may be looked upon as fruit of the first. But this Court has never gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed.

*Bayer*, 331 U.S. at 540–41, 67 S.Ct. at 1398. Thus, if the later confession is shown to be an act of free will and relatively untainted by the earlier statement, it is admissible. *See Bayer*, 331 U.S. at 541, 67 S.Ct. at 1398; *Autry*, 626 S.W.2d at 765. In view of the fact that there is no direct support in the record for the suggestion that appellant's second confession was involuntary because the cat had already been let out of the bag, and considering the factors examined above that indicate that the second confession was both voluntary and purged of any initial taint, we reject appellant's argument that the second confession was improperly admitted because he had already "told all." *See Autry*, 626 S.W.2d at 765.

We agree with the trial judge that the taking of the second confession by Waldschmidt was not improper. The second confession was not fatally tainted by any illegality in the taking of the former confession by Gaskin. The two confessions are distinct in source and character. They were given on separate dates—December 31, 1987, and January 5, 1988—at separate places—the DHS offices and the Collin County sheriff's office—to employees of separate governmental departments—a state employee of the Department of Human Services and a county employee of the sheriff's department—and for different purposes and under different conditions.

The first confession focused almost exclusively on the complaint lodged by the father of Emily; the second detailed for the first time sexual abuses which included the complainant as the victim. On the first occasion, Gaskin did not treat appellant as being under custodial interrogation; on the second occasion, the custodial nature of the interrogation was clearly communicated to appellant. There is no evidence that appellant was either tricked or coerced into appearing before Waldschmidt for a further interview; in fact, there is some evidence that the scheduling of the additional conference was done pursuant to appellant's desire to cooperate in the investigation.

After considering all of the circumstances discussed above, we conclude that Waldschmidt did not obtain the second confession by exploiting any illegal intrusion which resulted in appellant's first confession. We hold that any causal chain linking the two confessions is so attenuated as to purge the second of any taint associated with the first. *See Wicker*, 667 S.W.2d at 141; *Autry*, 626 S.W.2d at 764–65; *Starkey*, 704 S.W.2d at 810–12. We overrule appellant's first point of error.

In his second point of error, appellant argues that the trial court erred by admitting into evidence the videotaped interview of the complainant. Appellant objected to its introduction as violating his right to confront witnesses as guaranteed by both the federal and state constitutions. He relies upon the principles enunciated in *Long v. State*, 742 S.W.2d 302 (Tex.Crim. App.1987), *cert. denied*, 485 U.S. 993, 108 S.Ct. 1301, 99 L.Ed.2d 511 (1988), which buttress his constitutional rights against the use of videotaped testimony in child sex abuse cases. The State maintains that appellant waived his rights to bar the videotape because of certain testimony elicited by his counsel. *See* Tex. R.Crim.Evid. 107. Appellant's counsel inquired of Gaskin as to whether she believed the statements which the complainant had made during videotaping. He also cross-examined Gaskin concerning the kind of sexual contact which the complainant had described during the videotaped interview. Without objection, Gaskin testified that the complain-

ant reported that appellant had used his finger to penetrate her vagina and had made contact with her vagina with his tongue.

■ We agree with appellant that introduction of the videotape was improper in the context in which it was offered. Because of the magnitude of the constitutional prohibitions involved, we are not persuaded that appellant opened the door to introduction of the videotape by such questions as were posed to Gaskin. We conclude, however, that its introduction was harmless. The test for harmful error, even if the error is constitutional, is whether there is a reasonable possibility that the evidence complained of contributed to the conviction or affected the punishment assessed. *Self v. State*, 709 S.W.2d 662, 668 (Tex.Crim.App.1986); *see* Tex.R.App.P. 81(b)(2). In this instance, the trial was before the court. The trial court had the benefit of a written confession by appellant as well as direct testimony from the complainant and unobjected to testimony from Gaskin concerning significant statements made by the complainant during the videotaped interview. The videotape supplied no material evidence that was not already available to the trier of fact from other sources. Therefore, the error in admitting it could not reasonably have affected the decision to convict or the assessment of punishment. *See Cartmill v. State*, 748 S.W.2d 581, 583–84 (Tex.App.—Dallas 1988, pet. granted); *Offor v. State*, 749 S.W.2d 946, 950–51 (Tex.App.—Austin 1988, pet. ref'd, untimely filed); *Lighter v. State*, 741 S.W.2d 568, 570 (Tex.App.—Beaumont 1987, pet. ref'd). We overrule the second point of error.

Appellant argues in his third point of error that the evidence was insufficient to support the conviction because his extrajudicial confession was not corroborated as to where the offense occurred and as to the manner in which the offense was committed. In his fourth point of error, appellant contends that the evidence was insufficient to support conviction because the State failed to prove the date of the alleged offense. Appellant's claims arise because

the complainant's live testimony did not completely comport with the account she gave during videotaping and with appellant's confession to Waldschmidt. In particular, although during the trial the complainant reported digital penetration of her vagina by appellant, she could not remember any oral contact. Also, she could not identify any specific places and dates but stated generally that appellant gave her "bad touches" when she visited at her grandparents' home.

■ A defendant's extrajudicial confession, standing alone, is not sufficient to support a conviction, and unless there is other evidence which, taken with the defendant's statement, establishes beyond a reasonable doubt the defendant's guilt, the evidence must be held insufficient. *Soffar v. State*, 742 S.W.2d 371, 375 (Tex.Crim. App.1987). The confession must be corroborated by evidence that a crime has been committed; in other words, the corpus delicti must be proven. *Adrian v. State*, 587 S.W.2d 733, 734 (Tex.Crim.App. [Panel Op.] 1979). When confronted with a claim that the evidence was insufficient to support a conviction, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Sutherlin v. State*, 682 S.W.2d 546, 548–49 (Tex.Crim.App.1984). We also give effect to the principle that the trier of fact is the sole judge of the weight and credibility of the witnesses and may believe or disbelieve all or any part of any witness's testimony.. *Hernandez v. State*, 538 S.W.2d 127, 131 (Tex.Crim.App.1976).

■ Another family member testified that the complainant's grandparents had lived in Collin County at 1011 Brown Street, Wylie, Texas, from November 1980 until sometime in November 1987. The offense charged in the indictment is alleged to have occurred on or about November 7, 1987. Gaskin testified that the complainant had told her that an incident of digital penetration and oral contact with her vagi-

na had occurred at her grandparents' house while packing was taking place. The packing referred to was being done in preparation for the grandparents' move from 1011 Brown Street in Wylie to another address in Wylie.

In the second confession, appellant stated that "[w]hile on Brown St[.,] I performed oral sex to [the complainant] and penetrated her vagina with my finger simulating intercourse." In our view, this statement is corroborated by other evidence. Gaskin corroborated, without objection, the manner in which the offense was committed by stating that the complainant had reported digital penetration of her vagina and oral contact with her vagina. Gaskin further testified, again without objection, that the complainant told her that this sexual contact occurred at her grandparents' house while packing was taking place. Her testimony clearly indicated that the incident occurred at the house at 1011 Brown Street in Wylie, Collin County, Texas.

■ As to the date of the offense, it is clearly the law that when an "on or about" date is alleged as the date of an offense, the time mentioned must be a date anterior to the presentation of the indictment and not so remote that prosecution is barred by the statute of limitations. In such a case, the State is not bound by the date alleged; conviction may be had upon proof that the offense was committed any time prior to the return of the indictment that is within the period of limitations. *Ex parte Hyett*, 610 S.W.2d 787, 789 (Tex. Crim.App.1981); *see* TEX.CODE CRIM.PROC. ANN. art. 21.02(6) (Vernon 1989). However, appellant argues further that he was entitled to sufficient information with which to prepare a defense. He contends on appeal that the time frame for which he had to prepare a defense was unclear and confusing, encompassing several years. We may assume, without deciding, that appellant might have been able to successfully argue to the trial court that the indictment failed to provide adequate notice. However, any such error was waived because appellant failed to raise it by a pretrial motion to

quash. *See Ex parte Kirby,* 626 S.W.2d 533, 534 (Tex.Crim.App.1981); TEX. CODE CRIM.PROC.ANN. art. 1.14(b) (Vernon Supp. 1989). The case relied upon by appellant is consistent with our holding since the defendant in that case had filed a motion to quash the indictment. *See Janecka v. State,* 739 S.W.2d 813, 816–20 (Tex.Crim. App.1987).

Although the applicable statute of limitations is not abundantly clear on the subject, the period of limitations for the crime charged was either ten years or five years. *See* TEX.CODE CRIM.PROC.ANN. art. 12.01 (Vernon Supp.1989). The evidence, viewed in the light most favorable to the verdict, indicates that the charged offense occurred while packing was taking place at a time close to, and prior to, the grandparents' move from the house at 1011 Brown Street. That move took place sometime in November 1987. The indictment was filed on February 9, 1988. Clearly, the evidence shows that the "on or about" date alleged, November 7, 1987, was anterior to the presentation of the indictment and within the statute of limitations. No error is shown. We overrule appellant's third and fourth points of error.

Appellant argues in his fifth point of error that the trial court erred in denying appellant's motion for instructed verdict in the case involving the complainant. This contention is based on the preceding claim that the State failed to establish the location of the charged offense or that there was contact between the complainant's vagina and appellant's mouth. Since we have already rejected the claim upon which this point is based, we overrule appellant's fifth point of error.

■ In his sixth point of error, appellant contends that the trial court erred in failing to properly make and enter findings of fact and conclusions of law in the record concerning the voluntariness of appellant's written and oral extrajudicial confessions. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6 (Vernon 1979); *Dykes v. State,* 649 S.W.2d 633, 636 (Tex.Crim.App.1983). In this case, the trial judge heard evidence on the motion to suppress and thereafter dictated his findings and conclusions to the court reporter. These findings were transcribed and made part of the statement of facts which has, in turn, been made a part of the appellate record. Under these circumstances, the requirement of written findings as mandated by article 38.22 has been met. *See Parr v. State,* 658 S.W.2d 620, 623 (Tex.Crim.App.1983); *Horn v. State,* 699 S.W.2d 714, 715–16 (Tex.App.— Fort Worth 1985, no pet.). We overrule appellant's sixth point of error.

■ In his final point of error, appellant argues that the trial court erred in denying his motion to exclude a psychologist's ʋestimony on the issues of competency and sanity. Appellant contends that competent medical and psychiatric evaluation was required and that the State's psychologist, Jerry L. Landrum, was not capable of providing such evaluation. The record shows that Landrum was a psychologist in private practice with a master's degree and a doctorate in psychology. He was certified and licensed by the Texas State Board of Examiners in Psychology. He had worked at the maximum security unit at Rusk State Hospital where he evaluated psychiatric patients who were charged with offenses. He also worked part-time for the Department of Human Services seeing various clients in child abusive families. Landrum had also been an associate professor in the Department of Criminal Justice at the University of Texas in Tyler. His work history involved considerable work with persons who had been charged with offenses in cases in which competency or sanity was an issue. Under these circumstances, we conclude that the trial court did not err in allowing Landrum to testify regarding the issues of competency and sanity. *See Hogan v. State,* 496 S.W.2d 594, 596–97 (Tex.Crim.App.), *cert. denied,* 414 U.S. 862, 94 S.Ct. 81, 38 L.Ed.2d 112 (1973); TEX.R.CRIM.EVID. 702. We overrule appellant's seventh point of error.

We affirm the trial court's judgment.