**AFFIRMED, Opinion Filed February 24, 1994**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-92-01586-CR

### JIMMY DONALD BUIE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 4
Dallas County, Texas
Trial Court Cause No. F91-44995-SK

## OPINION

Before Justices Maloney, Barber, and Whittington
Opinion By Justice Barber

Jimmy Donald Buie was convicted by a jury for the offense of aggravated robbery as alleged in the indictment. The jury also found that appellant used or exhibited a deadly weapon during the course of the commission of the offense. Appellant pleaded true to the enhancement paragraph contained in the indictment. The trial court sentenced appellant to thirty years' confinement. On appeal, appellant asserts that the trial court erred in: (1)

admitting appellant's oral statements to Officer Mason; and (2) overruling appellant's objection that he was deprived of his right to counsel in the taking of his oral statement. We affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

On November 9, 1991, at about 10:00 p.m., William Harless (complainant) parked his car on Hall Street, just off of Oak Lawn Street, in Dallas, Texas. After the complainant got out of his car, he was approached by appellant. Appellant put a gun to the complainant's chest. The complainant then took money from his pocket and gave it to appellant. Appellant turned and ran down an alley, getting into the passenger side of a car. The complainant returned to his car and followed appellant's car. After he got the license plate number of appellant's car, the complainant pulled off to call the police. Within fifteen minutes after the robbery, Dallas police officer Penelope Mills, observed appellant's vehicle being driven erratically and speeding. Mills stopped appellant's vehicle at Oak Lawn and Stemmons and issued citations to the driver, Byron Fossett, and a citation to the passenger, appellant, for failure to appear on a prior ticket. After issuing the citations, Mills released Fossett and appellant.

After the complainant identified appellant in a photo lineup, appellant was indicted for the offense of aggravated robbery, arrested, and placed in jail. While in custody, appellant sent word through a deputy that he wished to speak to Detective Mason of the Dallas Police Department. Mason went to the jail to speak to appellant. The trial court's

-2-

ruling with respect to statements made by appellant during the conversation initiated by appellant form the basis of this appeal.

Pursuant to Article 38.22, § 6[1] of the code of criminal procedure and *Jackson v. Denno*, 378 U.S. 368 (1964), the trial judge held a hearing outside the presence of the jury on appellant's oral motion to suppress his statement. At the hearing, Mason testified that he went to speak to appellant at appellant's request. Ordinarily, he would not have gone to speak to appellant. Mason informed appellant that he was the detective who had filed the case and gave appellant the *Miranda*[2] warning. Appellant wanted to discuss the aggravated robbery case with which he was charged. He told Mason that he loaned his car to Byron Fossett and that appellant attended a Luther Vandross concert that night. Mason told appellant that the case had been filed and he could not discuss it with appellant.

Mason wanted to discuss other robberies in which he thought appellant might be involved. He asked if appellant had done any other robberies. Appellant replied "no," and kept talking about the aggravated robbery for which he was charged. Mason again told appellant that Mason could not discuss it with him. Mason asked the name of appellant's attorney. Appellant gave Mason the name, but said his family was getting another attorney for him and he did not know who it was at that time.

---

[1] All references to 38.22 are to TEX. CODE CRIM. PROC. ANN. art. 38.22 (Vernon 1979 and Vernon Supp. 1994).

[2] *Miranda v. Arizona,* 384 U.S. 436 (1966).

Mason testified that appellant seemed "unsure" when he answered Mason's question about other robberies. Therefore, Mason asked appellant if it were possible that appellant could have been riding around with somebody, and that person might have committed a robbery of which appellant was not aware, but appellant might have been tied to the robbery because he was in the car. Appellant first said no, but then said "that might have been that way that night for this offense."

> [MASON]: And I said, "well is it?" And he [appellant] said, "well, it might have been. I don't know." And that's where it ended. I didn't question him more about it.
>
> [PROSECUTOR]: Did he give you specifics, though as to what -- as to why he thought it might be that night or why it might have happened that way?
>
> [MASON]: He said that he was driving with a friend, they parked in an alley, the friend -- he said the friend had to get out and I believe is [sic] use the bathroom or something, but he walked out of the alley, he came running back to the car or came back to the car, they got in and drove off.
>
> Q. Okay. Would that friend's name have been a Byron Fossett?
>
> A. I believe that's the name he said.
>
> Q. Okay. What else as far as that interview?
>
> A. He also said -- when I first got there he said he didn't do the robbery, that he had loaned the car that night to Byron Fossett. He said that he was at a concert that night and that's how he knew he didn't do the robbery.

Appellant objected to the admission of the statements on the basis that they were

-4-

taken in violation of his right to counsel under the Sixth Amendment[3] and article I, section 10 of the Texas constitution and in violation of article 38.22 of the code of criminal procedure. Overruling appellant's motion to suppress, the trial judge found that appellant initiated the conversation with Mason and concluded the statements were admissible on that basis.[4] The trial continued.

Mason testified before the jury that several weeks after appellant's arrest, appellant left word with a deputy sheriff that he wanted to talk to Mason. About a week later Mason went to the jail, identified himself as the person who filed the aggravated robbery case on appellant, and asked appellant if he wanted to talk to him. When appellant said he did, Mason read appellant the *Miranda* rights and asked him who his attorney was. Appellant said originally his counselor was Brashear, but his family did not want Brashear representing him anymore and they were getting him new counsel.

Questions by the prosecutor to and answers by Mason:

PROSECUTOR: Okay. What happened from that point on?

MASON: He wanted to talk about the robbery that I'd filed on the case he was in jail on. I told him that I could not discuss that case, the case had been filed, I cannot help you with it. But he wanted to tell me that he didn't do the robbery, that he

---

[3] U. S. CONST. amend. VI.

[4] The trial court dictated its findings and conclusions to the court reporter. These findings were transcribed and made part of the statement of facts which has been made part of the appellate record. Under these circumstances, the requirement of written findings mandated by article 38.22 has been met. *Perkins v. State*, 779 S.W.2d 918, 925 (Tex. App.--Dallas 1989, no pet.); *see also Parr v. State*, 658 S.W.2d 620, 623 (Tex. Crim. App. 1983).

was at a concert that night and again I told him that -- that I cannot discuss the case. What I was there to talk to him about was other robberies that he might have been involved in and he eventually told me a name of a person that he had loaned the car to that night.

Q. Okay and that person's name?

A. Byron Fossett.

Q. Okay. What else -- what else was said?

A. We talked about -- I asked him if there was any chance he might have been involved in some more robberies in that area or anywhere else. Did -- he first said no, but then he was really -- he sounded very unsure. He said, I don't think so, I don't remember any.

I said, Could it have been a case where you might have been riding with some friends or somebody and they committed a robbery but you didn't know at the time until they got back to the car or later on where you could have been seen, and he said, well, that's possible. He said, that could have happened that night.

Q. Okay. Which night?

A. On November 9th --

Q. Okay.

A. '91.

Q. What did he say about that incident? Why did he say that that could have been possible?

A. Because he was riding around with -- I believe, if I remember right, he said Byron that night. It might not have been Byron, but that he was driving in the Oak Lawn area, he

pulled into an alley because Byron, I think he said, had to use the bathroom. That he sat in the car and Byron got out of the car, Byron came back to the car and they left.

I asked him again if this -- if he remembers being involved in any other robberies anywhere that might come back to effect [sic] him and he said not that he can remember and that's about the point where we ended it right there.

Q. Okay. Had he -- during that conversation, then, had he previously denied being involved on November 9th, 1991?

A. Yes.

Q. And then did he later indicate that it was possible that he had been riding around on that night?

A. That's correct.

Appellant did not testify during the suppression hearing. However, he testified before the jury that Mason did not read him the *Miranda* warnings and did not tell him not to talk about the aggravated robbery. He also denied telling Mason that he and Fossett rode around together on November 9, 1991, and receiving a citation while a passenger in the vehicle.

Appellant further testified that on November 9, 1991, he attended a Luther Vandross concert at Reunion Arena with his fiancee (now his wife). They arrived at Reunion Arena at about 8:45 p.m. and the concert ended at about 12:30 a.m. Appellant never left the arena during that time period. Appellant loaned his Thunderbird to Byron Fossett that evening.

Sheila Buie, appellant's wife, testified that she and appellant attended a Luther Vandross concert at Reunion Arena on November 9, 1991. The concert lasted from about 9:00 p.m. until 12:15 a.m. Appellant remained with her except for a short period during intermission when he went to get her a drink. After the concert they went to appellant's sister's home where they remained the rest of the night. She further testified that Fossett borrowed appellant's car that evening.

Kimberly Jones testified that she had known appellant approximately three and one-half years. She saw appellant at the Luther Vandross concert between 10:30 p.m. and 10:45 p.m. on November 9, 1991.

Byron Fossett testified that he and appellant were involved in a robbery on November 9, 1991.[5] Fossett pulled into an alley off Hall Street. Appellant got out of the car with a gun and Fossett waited in the car. Appellant returned to the car and told Fossett that he "got some money." They left, driving down Hall to Oak Lawn. They were stopped by a police officer and issued citations for failure to appear.

## STANDARD OF REVIEW

In a suppression hearing, "the trial judge is the exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony." *Romero v.*

---

[5] Fossett testified on two prior occasions. The first time Fossett testified, he said he borrowed appellant's Thunderbird on November 9, 1991. He went to a nightclub known as the Cliff Club. While he was there he saw a friend named "T." Fossett rented "T" the Thunderbird for ten dollars. "T" was gone almost two hours, returning to the club at about 11:00 p.m. The second time Fossett testified, he again claimed that he loaned the Thunderbird to "T." He also denied receiving a ticket on November 9, 1991. Fossett's testified a third time after he was granted use immunity for the testimony and an agreement was made that no aggravated perjury charge would be filed against him.

*State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). On appeal, we do not engage in our own factual review. *Id.* We determine whether the trial judge's fact findings are supported by the record. *Id.* We do not disturb the findings of fact if they are supported by the record; we only address the question of whether the trial court improperly applied the law to the facts. *Id.* If the trial judge's decision is correct on any theory of law applicable to the case, we will sustain it, even if the trial judge gave the wrong reason for his decision. *Id.*

## ARTICLE 38.22

In his first point of error, appellant claims that the trial court erred in admitting appellant's oral statements to Mason. Article 38.22, § 3(a) of the code of criminal procedure provides that unrecorded oral statements of the accused which are the product of a custodial interrogation are inadmissible. Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a) (Vernon Supp. 1994). However, article 38.22 does not bar the admission of statements which are not the product of a custodial interrogation. *Id.* § 5 (Vernon 1979).

"'Custodial interrogation' is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Cannon v. State*, 691 S.W.2d 664, 671 (Tex. Crim. App. 1985), *cert. denied*, 474 U.S. 1110 (1986). Appellant was clearly in custody when he made the statement to Detective Mason. Therefore, the question is whether the statement was the product of an interrogation.

It is undisputed that appellant initiated the conversation with Mason and there was

initially no custodial interrogation. However, appellant contends that Mason's questions after the point appellant asserted his innocence of the aggravated robbery became a custodial interrogation because appellant was not initiating the conversation at that point. Appellant argues that Mason's questions went further than inquiring about other offenses and suggested that appellant was involved in the aggravated robbery with which he was charged. The state argues that the statement was not the product of a custodial interrogation.

"'Interrogation' . . . must reflect a measure of compulsion above and beyond that inherent in custody itself." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). Interrogation refers to both express questioning and to any words or actions on the part of police that they should know are reasonably likely to elicit an incriminating response from the suspect. *Id.* at 301; *Henson v. State*, 794 S.W.2d 385, 392 (Tex. App.--Dallas 1990, pet. ref'd).

Reviewing the record before us, we conclude that Mason's questions regarding other possible offenses did not amount to a custodial interrogation regarding the aggravated robbery for which appellant was indicted and in custody. Appellant initiated the conversation with Mason. Mason read appellant the *Miranda* warning and appellant told Mason that he wished to talk about the aggravated robbery. Mason twice told appellant that he could not discuss the case; he only wanted to talk to appellant about other robberies in which appellant was possibly involved. However, appellant persisted in talking about the aggravated robbery and eventually made inculpatory statements.

Assuming, without deciding, that Mason's questions regarding other offenses amounted to a custodial interrogation regarding those offenses, we conclude that under these circumstances, the questions were not such that Mason knew or should have known he was likely to elicit an incriminating response from appellant regarding the aggravated robbery in issue. *See Innis*, 446 U.S. at 303. Appellant's oral statements were admissible under article 38.22, § 5.

We overrule appellant's first point of error.

## APPELLANT'S RIGHT TO COUNSEL

In his second point of error, appellant contends that the trial court erred in overruling his objection that he was deprived of his right to counsel when his oral statement was taken. Appellant objected at trial on the grounds that he was deprived of his right to counsel under the Sixth Amendment and article I, section 10 of the Texas constitution.[6] Appellant did not separately brief this point of error to tell us why his rights are different or greater under article I, section 10 of the Texas constitution. Therefore, appellant has waived this argument and we will address only his Sixth Amendment claim. *See Muniz v. State*, 851 S.W.2d 238, 251-52 (Tex. Crim. App.), *cert. denied*, 114 S. Ct. 116 (1993).

"Whatever else it may mean, the right to counsel granted by the Sixth and Fourteenth

---

[6] Appellant also argues in his brief that his *Miranda* rights were violated. As appellant did not raise a violation of his Fifth Amendment rights at trial, we will read this argument as applying to appellant's invocation of his right to counsel under the Sixth Amendment. To the extent that appellant asserts a violation of his Fifth Amendment rights, error, if any, is not preserved for review. Appellant may not raise different error on appeal than was presented to the trial court. *See Gardner v. State*, 733 S.W.2d 195, 201 (Tex. Crim. App. 1987), *cert. denied*, 488 U.S. 1034 (1989); *Vanderbilt v. State*, 629 S.W.2d 709, 721 (Tex. Crim. App. 1981), *cert. denied*, 456 U.S. 910 (1982).

-11-

Amendments means at least that a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him--'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer v. Williams*, 430 U.S. 387, 398 (1977)(quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Appellant was indicted on the aggravated robbery charge before he spoke to Mason. It is undisputed that appellant's Sixth Amendment right to counsel had attached to the instant offense at the time he made the statements to Mason.

The State argues that appellant never invoked his right to have counsel present during Mason's meeting with appellant. However, this argument must fail in light of *Holloway v. State*, 780 S.W.2d 787 (Tex. Crim. App. 1989). In *Holloway*, the court of criminal appeals held that where a defendant has been indicted and an attorney-client relationship is established, authorities may initiate an interrogation with the defendant only through defense counsel. *Id.* at 795; *see also Upton v. State*, 853 S.W.2d 548, 553 (Tex. Crim. App. 1993). Although appellant was uncertain as to the status of his counsel at the time he spoke with Mason, the record reflects that appellant was represented by counsel. Therefore, any police initiated interrogation with appellant would be in violation of his Sixth Amendment right to counsel.

However, *Holloway* does not control the disposition of appellant's case. First, appellant, unlike the situation in *Holloway*, initiated the contact with Mason. "[N]othing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel

-12-

from voluntarily choosing, on his own, to speak with police in the absence of an attorney." *Michigan v. Harvey*, 110 S. Ct. 1176, 1181 (1990). A defendant may initiate communication, exchanges, or conversations with the police as long as there is a showing that he knowingly and voluntarily waived his right to counsel. *See Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983). Initiation is an inquiry representing a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. *Id.* at 1045-46.[7]

The record reveals that appellant sent word that he wanted to talk to Mason. When Mason asked appellant what he wanted, appellant said that he "wanted to talk about the robbery case, he didn't do it." Clearly, this reflected a desire on the part of appellant that he wished to open up a more generalized discussion relating directly or indirectly to the investigation. This seems far more true of appellant's statement than the statement, "Well, what is going to happen to me now?" that the *Bradshaw* court found to be an "initiation." "Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will." *Harvey*, 110 S. Ct. at 1182.

Second, unlike the situation in *Holloway*, Mason did not deliberately elicit incriminating information from appellant. "Deliberate elicitation" is "intentionally creating

---

[7] Although *Bradshaw* addresses waivers of a defendant's Fifth Amendment right to counsel, we see no reason that the same analysis cannot apply to defendant-initiated communications and the Sixth Amendment right to counsel. *See Harvey*, 110 S. Ct. at 1182; *see also Michigan v. Jackson*, 475 U.S. 625, 635 (1986).

-13-

a situation likely to induce [a person] to make incriminating statements without the assistance of counsel." *United States v. Henry*, 447 U.S. 264, 274 (1980). The deliberate elicitation test is satisfied either with proof that the officer intended to elicit an incriminating response or must have known that his words or actions were likely to elicit an incriminating response from the accused. *Lara v. State*, 740 S.W.2d 823, 833 (Tex. App.--Houston [1st Dist.] 1987, pet. ref'd), *cert. denied*, 493 U.S. 827 (1989); *see also Maine v. Moulton*, 474 U.S. 159, 176 (1985).

The Sixth Amendment right to counsel is offense specific. *McNeil v. Wisconsin*, 111 S. Ct. 2204, 2207 (1991). The Sixth Amendment was not implicated by Mason's questions regarding other uncharged crimes in which appellant may have been involved. *See id.* (Sixth Amendment does not attach until initiation of adversary judicial criminal proceedings).

This was not a situation in which the police used the investigation of other crimes to circumvent appellant's Sixth Amendment right to counsel. Mason told appellant twice that he could not discuss appellant's case. Despite these warnings, appellant continued to talk about the aggravated robbery with which he was charged, eventually giving an inculpatory statement. "[T]he Sixth Amendment is not violated whenever -- by luck or happenstance -- the State obtains incriminating statements from the accused after the right to counsel has attached." *Moulton*, 474 U.S. at 176; *Henry*, 447 U.S. at 276 (Powell, J., concurring). We cannot say that Mason intended or must have known that his questions regarding other crimes in which appellant was possibly involved would elicit a response inculpating appellant

-14-

in the aggravated robbery with which he was charged.

Additionally, this was not a situation in which the aggravated robbery was an element that would be used to aggravate the offenses for which appellant's right to counsel had not yet attached. *See Upton*, 853 S.W.2d at 555. The robberies about which Mason wished to question appellant were unrelated to the aggravated robbery with which he was charged.

Finally, the record supports the conclusion that appellant knowingly and voluntarily waived his right to have counsel present during his conversation with Mason. Waiver is the intentional relinquishment of a known right. *Robles v. State*, 577 S.W.2d 699, 703 (Tex. Crim. App. 1979). The State bears a heavy burden of showing a valid waiver as the presumption is against waiver of a fundamental constitutional right. *Id.* "[A]n explicit statement of waiver is not invariably necessary to support a finding that the defendant waived his right . . . to counsel. . . ." *North Carolina v. Butler*, 441 U.S. 369, 375-76 (1979). We determine whether appellant waived his right to counsel by the totality of the circumstances. *See Barefield v. State*, 784 S.W.2d 38, 41 (Tex. Crim. App. 1989), *cert. denied*, 497 U.S. 1011 (1990).

Appellant initiated the conversation with Mason. Mason read appellant the *Miranda* warnings. When appellant indicated that he wanted to discuss the aggravated robbery with which he was charged, Mason told him that he could not discuss it. Appellant continued to talk about the aggravated robbery, and Mason again told him that he could not discuss it. Appellant still talked about the aggravated robbery and eventually gave an inculpatory

statement. Reviewing the totality of the circumstances, we conclude appellant knowingly and voluntarily waived his right to counsel.

We overrule appellant's second point of error.

## HARMLESS ERROR

Finally, we conclude that error, if any, in admitting appellant's statement was harmless. *See* Tex. R. App. P. 81(b)(2). The United States Supreme Court permits a harmless error analysis where the effect of a Sixth Amendment violation is limited to the erroneous admission of particular evidence at trial. *See Satterwhite v. Texas*, 486 U.S. 249, 257 (1988); *Young v. State*, 820 S.W.2d 180, 189 (Tex. App.--Dallas 1991, no pet.). Error is harmless if the State can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict or punishment. *Satterwhite*, 486 U.S. at 256.

Appellant argues that the statements were not harmless because they directly conflicted with his testimony that he was at a Luther Vandross concert on the night of the aggravated robbery. However, other evidence presented by the State showed that appellant was not at the concert and implicated him in the aggravated robbery.

The complainant testified at the outset that appellant robbed him at gunpoint on November 9, 1991. He identified appellant three times as being the individual who robbed him: in a photo lineup, during a suppression hearing, and in open court during appellant's trial.

Mills testified that on November 9, 1991, at 10:15 p.m., she stopped a vehicle on Oak

-16-

Lawn. Fossett was driving and appellant was the passenger. The two men identified themselves by their names and dates of birth. Mills checked the two men through the computer and learned of outstanding warrants for the two men for failure to appear on other citations. Mills issued citations to both men for failure to appear on their prior citations. Mills identified appellant in court as being the passenger in the vehicle.

Fossett testified that he and appellant were involved in a robbery on November 9, 1991. Fossett pulled into an alley off Hall Street. Appellant got out of the car with a gun and Fossett waited in the car. Appellant returned to the car and told Fossett that he "got some money." They left, driving down Hall to Oak Lawn. They were stopped by a police officer and issued citations for failure to appear.

Additionally, the State did not emphasize the statements. During closing argument, the prosecutor only once referred to Mason's testimony regarding appellant's statements.

We conclude beyond a reasonable doubt that any error in admitting the statements did not contribute to appellant's conviction or punishment. *See Satterwhite*, 486 U.S. at 257; *Young*, 820 S.W.2d at 190.

## CONCLUSION

We conclude that the trial court did not err in allowing the admission of appellants statements or in overruling appellant's objection that his Sixth Amendment right to counsel was violated. We overrule appellant's two points of error.

-17-

We affirm the trial court's judgment.


_____
WILL BARBER
JUSTICE


Do Not Publish
Tex. R. App. P. 90
921586F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

*72/249*
*affirmed*
*DNF*

## JUDGMENT

JIMMY DONALD BUIE, Appellant

No. 05-92-01586-CR      V.

THE STATE OF TEXAS, Appellee

Appeal from the Criminal District Court No. 4 of Dallas County, Texas. (Tr.Ct.No. F91-44995-SK).

Opinion delivered by Justice Barber, Justices Maloney and Whittington also participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered February 24, 1994.

_____
WILL BARBER
JUSTICE