ACCEPTED
13-14-00661-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
12/3/2015 3:10:39 PM
Dorian E. Ramirez
CLERK

# CAUSE NO. 13-14-00661-CR

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## IN THE COURT OF APPEALS
## THIRTEENTH JUDICIAL DISTRICT OF TEXAS
## CORPUS CHRISTI - EDINBURG, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
12/3/2015 3:10:39 PM
DORIAN E. RAMIREZ
Clerk

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ELIAS GAITAN,

Appellant,

v.

## THE STATE OF TEXAS,

Appellee.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## STATE'S APPELLATE BRIEF

## ON APPEAL FROM CAUSE NO. 2014-DCR-955-E

## IN THE 357TH JUDICIAL DISTRICT COURT

## CAMERON COUNTY, TEXAS

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Luis V. Saenz**
County and District Attorney
Cameron County, Texas

**Kristine N. Trejo**
Assistant District Attorney
Cameron County, Texas
State Bar No. 24091764

964 E. Harrison St.
Brownsville, Texas 78520
Tel: (956) 544-0849
Fax: (956) 544-0869
*Counsel for the State*

## ORAL ARGUMENT REQUESTED

## Statement Regarding Oral Argument

Appellant has requested oral argument pursuant to Tex. R. App. P. 39.1 stating that the facts and legal arguments as to the issues presented herein would be significantly clarified by oral argument. The State requests oral argument as well.

## Identification of the Parties

**Counsel for the State of Texas – Appellee:**

Cameron County District Attorney:
Luis V. Saenz
964 E. Harrison St.
Brownsville, Texas 78520

Appellate Assistant District Attorney:
Kristine N. Trejo
Rene Gonzalez

Trial Court Assistant District Attorneys:
Brandy Bailey
Luis De La Garza

**Counsel for Elias Gaitan – Appellant:**

Trial Court Attorneys:

Rebecca Rubane,
847 E. Harrison
Brownsville, Texas 78520

Appellate Attorney:

Joseph Moreno
23409 El Paso Dr.,
Harlingen, Texas  78552

**Trial Court Judge, 357TH Judicial District, Cameron County, Texas:**

Hon. Oscar X. Garcia

# Table of Contents

**Page**

Statement Regarding Oral Argument ................................................................. i

Identification of the Parties ............................................................................. i

Table of Contents ........................................................................................... ii

Index of Authorities ...................................................................................... iii

Statement of the Case ................................................................................... iv

Statement of the Facts ................................................................................... 2

Summary of the Argument ............................................................................. 6

Argument ....................................................................................................... 8

A. The trial court was correct when it refused to suppress the second two statements of Appellant because they were not the product of continued questioning after Appellant requested assistance of counsel………………..8
B. Trial counsel did not provide ineffectivence assistance of counsel when she failed to object to previously excluded evidence…………………………..17

Prayer ........................................................................................................... 22

Certificate of Compliance ............................................................................. 23

Certificate of Service .................................................................................... 23

## Index of Authorities

**Page:**

**I. Cases**

**Federal**

*Edwards v. Arizona,* 451 U.S. 477 (1981) ……………………...............7

*McMann v. Richardson*, 397 U.S 759 (1970)……..................................7

*Powell v. Alabama*, 287 U.S. 45 (1932)……..……..………………........7

*Rhode Island v. Innis*, 446 U.S. 291 (1980)........................................7

*Strickland v. Washington,* 466 U.S. 668 (1984) ......................................7

*United States v. Singh*, 261 F.3d 530 (5th Cir.2001)..................................7

**State**

*Amador v. State*, 221 S.W. 3d 666 (Tex. Crim. App. 2007)………………………..8

*Ancira v. State,* 516 S.W.2d 924 (Tex. Crim. App. 1974)......................................11

*Armendariz v. State*, 123 S.W. 3d 401 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004)…………………………………………………………………….9

*Baldree v. State,* 784 S.W.2d 676 (Tex.Crim.App.1989)……………..………15, 17

*Best v. State*, 118 S.W. 3d 857 (Tex. App—Fort Worth 2003, no pet.)…………...8

*Cates v. State*, 776 S.W.2d 170 (Tex.Crim.App.1989)………………………10, 11

*Chambliss v. State*, 647 S.W.2d 257 (Tex.Crim.App.1983)………………………10

*Garcia v. State*, 57 S.W. 3d 475 (Tex. Crim. App. 2001)………………………...19

*Guzman v. State*, 955 S.W. 2D 85 (Tex. Crim. App. 1997)………………..…8

*Henson v. State*, 794 S.W. 2d 385 (Tex. Crim App. 1990)…………………...11, 12

*Holloway v. State,* 780 S.W.2d 787 (Tex.Crim.App.1989)………………………15

*Janecka v. State*, 739 S.W. 2d 813 (Tex. Crim. App. 1987)………….………..16

*Jones v. State,* 795 S.W.2d 171 (Tex.Crim.App.1990)……………...……………16

*Mata v. State*, 226 S.W. 3d 425 (Tex. Crim. App. 2007)……………………………19

*McCrory v. State*, 643 S.W.2d 725 (Tex.Crim.App.1982)……………………10, 11

*Paez v. State*, 681 S.W.2d 34 (Tex.Crim.App.1984)………………………………...10

*Roberston v. State*, 187 S.W. 3d 475 (Tex. Crim. App. 2006)………………..18, 19

*Romero v. State*, 800 S.W. 2d 539 (Tex. Crim. App. 1990)………………………..8

*Shiflet v. State,* 732 S.W.2d 622 (Tex. Crim. App. 1985)……..…………………..14

*State v. Consaul,* 960 S.W.2d 680 (Tex.App.-El Paso 1997, pet. dism'd)………...15

*State v. Cullen*, 195 S.W. 3d 696 (Tex. Crim. App. 2006)…………………………8

*State v. Kelly*, 204 S.W. 3d 808 (Tex. Crim. App. 2006)………………………..8, 9

*State v. Ross*, 32 S.W. 3d 853 (Tex. Crim. App. 2000)……………………………..8

*State v. Stevens*, 235 S.W. 3d 736 (Tex. Crim. App. 2007)………………………..9

*Thompson v. State*, 9 S.W. 3d 808 (Tex. Crim. App. 1999)………………………19

*Vasquez v. State*, 830 S.W. 2d 948 (Tex. Crim. App. 1992)……………………...19

*Wiede v. State*, 214 S.W. 3d 17 (Tex. Crim. App. 2007)…………...………….....8

**II. Constitution**
T EX C ONST. art. 1 §10…………………...…………………………………...18

U.S. C ONST. amend. VI…………………………...………………………………18

**III. Statutes**
Tex. Code Crim. Proc. Art. 38.22……………………………………………....7

## Statement of the Case

Nature of the Case:    Appellant was charged by indictment for four offenses:

Count I:  Aggravated Sexual Assault of a Child

Count II: Continuous Sexual Assault of a Child

Count III:  Indecency  with a child by contact

Count IV: Indecency with a child by contact

Trial Court:    357$^H$ Judicial District Court, Cameron County, Texas, Hon. Oscar X. Garcia

Proceedings:    Appellant pleaded not guilty to all four offenses.

A jury was selected for the trial on the merits.  The trial judge was selected to determine the guilt / innocence phase of trial.  On August 5, 2014, the trial began with evidence, and continued until August 8, 2014.

Trial Court Disposition:    The jury found Appellant guilty of all four counts in the indictment:  (I) Aggravated Sexual Assault of a Child, (II) Continuous Sexual Assault of a child, (III) Indecency with a child by contact; and (IV) Indecency with a child by contact.

The trial court judge sentenced Appellant to life in prison without the possibility of parole in the Texas Department of Criminal Justice-Institutional Division (hereinafter TDCJ-ID)  for Count I of the indictment, life in prison in the TDCJ-ID for Count II, and 20 years each in the TDCJ-ID for Counts III and IV, to run concurrently.

**CAUSE NO. 13-14-00661-CR**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**IN THE COURT OF APPEALS**
**THIRTEENTH JUDICIAL DISTRICT OF TEXAS**
**CORPUS CHRISTI - EDINBURG, TEXAS**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**ELIAS GAITAN**,

Appellant,

v.

**THE STATE OF TEXAS**,

Appellee.

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**STATE'S APPELLATE BRIEF**

**ON APPEAL FROM CAUSE NO. 2014-DCR-955-E**

**IN THE 357TH JUDICIAL DISTRICT COURT**

**CAMERON COUNTY, TEXAS**

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**To the Honorable Thirteenth Court of Appeals:**

Comes now the State of Texas, by and through the District Attorney for the 107th Judicial District, Cameron County, Texas, and files this Appellate Brief on behalf of The State of Texas. The State of Texas asks this Court to affirm the guilty verdict, and deny any and all other relief requested:

1

## Statement of Facts

On October 8, 2013, Detective Lucio of the Brownsville Police Department, Sex Crimes Unit, was assigned to investigate a Sexual Assault of a Child Case. 2 RR. 74, 16-19. After speaking with the victim, it became apparent that the suspect in this case was the victim's father, Mr. Elias Gaitan Jr. (hereinafter Appellant). 3 RR. 23, 9-17. During the course of his investigation and after Appellant was located and arrested, Detective Lucio had several conversations with Appellant regarding the case. 2 RR 75, 13-15. As a result, a Motion to Suppress was held before trial on the merits began regarding three separate statements made by Appellant.

The first of these statements was elicited during a conversation which took place at the police department. 2 RR 75, 11-12. Although only Detective Lucio and Appellant were present during this discussion, the conversation was recorded. 2 RR 75, 13-14. At the beginning of the conversation, Detective Lucio introduced himself and gave the purpose of the interview to Appellant. 2 RR 76, 7-12. At this point, Detective Lucio stated that Appellant requested the assistance of a public defender, to which Lucio replied "That's what I was fixing to do. I was going to make you aware of your rights. I was going to read you your rights. Are you aware of the charge?" 2 RR 76, 16-19. Detective Lucio then told Appellant about the charges against him and also informed him that it was his daughter who had

2

made the accusations. 2 RR 76, 20-23. However, Appellant was adamant that the accusations were made by his wife. 2 RR 77, 11-14.

During a pretrial motion to suppress, Detective Lucio stated that he was not trying to elicit any response from Appellant during this first conversation, but was merely trying to make Appellant aware of his rights and to clarify that Appellant's wife was not the person making the allegations. *Id.* Further, during the conversation between Lucio and Appellant, no straightforward admissions were made. 2 RR 87, 3-4. However, trial counsel for Appellant was concerned that the State would use Appellant's silence as to the allegations as an admission of guilt and wished to suppress the entire recorded conversation. 2 RR 87, 7-9. After legal arguments were heard by the court and the recording was played, this first recorded statement made by Appellant was suppressed by the trial court. 2 RR 87,

The second statement that Appellant's trial counsel sought to suppress took place during a recorded conversation between Appellant and his father, Mr. Elias Gaitan Sr. 2 RR 89, 1-3. During the Motion to Suppress, Detective Lucio testified that Mr. Gaitan came to the Brownsville Police Department and wished to speak with him regarding his son's case. *Id.* Mr. Gaitan told Detective Lucio that he wished to speak with Appellant regarding the allegations. 2 RR 89, 3-6. After speaking with his supervisor, Detective Lucio allowed Mr. Gaitan to speak with Appellant. 2 RR 89, 7-8. The conversation between Mr. Gaitan and Appellant

took place in a police interrogation room, where a camera was readily visible. 2 RR 90, 1-2. Although Detective Lucio admits that he did not directly inform either Mr. Gaitan or Appellant that their conversation would be recorded, it was evident by statements made during the recording that both parties were aware of this fact. 2 RR 89, 21-23. In fact, during this conversation, Appellant informed his father that he could not say much because they were being recorded. 2 RR 89, 21-23.

During this conversation, direct admissions were made by Appellant. 2 RR 90, 7-9. Appellant did not deny the allegations made against him and informed his father that his actions were not forceful against his daughter. 2 RR 90, 11-13. Before this second conversation took place, Detective Lucio did not tell Mr. Gaitan what to ask Appellant, nor did he request for Mr. Gaitan to speak with Appellant. 2 RR 90, 14-19.

The third statement took place soon after Appellant left the interview room where he had previously spoken with his father. 2 RR 93, 21-23. As Detective Lucio was escorting Appellant back to his jail cell at the police department, Appellant once again asked him when he would be allowed to speak with an attorney. 2 RR 94, 4-5. Detective Lucio informed Appellant that an attorney would be appointed to represent him. 2 RR 94, 7-8. Detective Lucio also told Appellant that once he had an attorney appointed, he (referring to Detective Lucio) would be available if Appellant wished to speak with him with his attorney

present.  2 RR 94, 7-9.  Appellant then stated that he wanted to work out a deal with the State, that he was not forceful with his daughter and that the sexual acts did not occur as often as she stated that they did.  2 RR 94, 8-9.  At this time, Detective Lucio was not questioning or interrogating Appellant, and did not say or do anything to elicit these statements from him.  *Id.*  Detective Lucio testified that after these statements were made, he again informed Appellant that "…once he had his attorney and wanted to speak with [him], [he] would be available."  2 RR 94, 10-11.

At the close of the Motion to Suppress and after legal arguments were made, the court granted Appellant's motion to suppress as to his first statement, but denied suppression of his second and third statements.  2 RR 107, 13-15; 2 RR 109, 1-2.  However, during trial on the merits, the State was able to elicit testimony regarding Appellant's first statement despite the fact that it had been previously suppressed by the Court.  3 RR 36, 12-23.  This testimony that was elicited by the State was not objected to by Appellant's trial counsel.  *Id.*

However, in addition to this statement, there was an overwhelming amount of evidence that was considered by the jury before Appellant was convicted.  In addition to the Appellant's statements, the State introduced into evidence two letters from Appellant to the victim.  4 RR 37, 10.  In these letters, Appellant asked the victim to create a video recanting her statements and instructed her not to speak

with any of the State's attorneys. 4 RR 42, 15-17. Testimony from Johanna Frausto, a forensic interviewer employed at the Cameron County Child Advocacy Center was also heard by the jury. 3 RR 129, 4-5. Through this testimony, the State was able to show the victim's video statement detailing the extent of the sexual abuse that she endured. 3 RR 142, 6-12. The State was also able to show that the victim had endured physical trauma to her hymen through the testimony of Goldie Stralder, a CART nurse who worked at Valley Baptist Medical Center and examined the victim after the outcry was made. 3 RR 74, 17-23. After considering all of the evidence, the jury entered a guilty verdict on all counts as they were alleged in the indictment. CR p. 143-146. Appellant was sentenced by the trial court to life without possibility of parole on Count I, life in prison on Count II, and twenty (20) years each on Counts II and IV. 7 RR 20, 17-23.

## Summary of the Argument

In Appellant's first point of error, Appellant alleges that his second two statements should have been suppressed by the trial court because they were taken after he requested the assistance of counsel and without a valid waiver of his rights. However, the State contends that Appellant's admissions made during a recorded conversation between Appellant and his father were not the result of custodial interrogation by a law enforcement agent. The State also asserts that Appellant's father voluntarily asked to speak with his son out of concern for his son's

6

wellbeing and that he was not acting as an agent of the State when the admissions were made. Further, Appellant initiated the communication with law enforcement which led to his third statement. Accordingly, Appellant's third statement was not made as a result of custodial interrogation. Thus, the requirements of Tex. Pen. Code 38.22 § 3 and Tex. Pen Code 38.23 simply do not apply to the admissibility of Appellant's second and third statements, and the trial court was correct in allowing them into evidence. Therefore, Appellant's first point of error should be overruled.

In Appellant's second point of error, he alleges that he received ineffective assistance of counsel because his trial counsel failed to object to previously excluded evidence at trial. Specifically, Appellant's trial counsel failed to object to testimony regarding Appellant's first statement, which was suppressed by the trial court. However, the State asserts that a single error should not result in a finding of ineffective assistance of counsel. Further, the State contends that Appellant has failed to show that the results of the proceeding would have been different but for counsel's actions since the suppressed statement contained no direct admissions by Appellant. Also, there was an overwhelming amount of evidence introduced at trial which proved Appellant's guilt to the offenses alleged. Therefore, Appellant failed to meet his burden of showing that he received ineffective assistance of counsel, and his second point of error should be overruled.

7

**Argument**

**A. The trial court was correct when it refused to suppress the second and third statements of Appellant because they were not the product of continued questioning after Appellant requested assistance of counsel**

    **a. Standard of Review and Applicable Statutory Law**

A trial court's ruling on a motion to suppress evidence is reviewed under a bifurcated standard of review. *Amador v. State*, 221 S.W. 3d 666, 573 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W. 2D 85, 89 (Tex. Crim. App. 1997). Findings of fact on a motion to suppress are reviewed under a clearly erroneous standard and conclusions of law are reviewed de novo. *See United States v. Singh*, 261 F.3d 530, 535 (5th Cir.2001). When reviewing the trial court's decision, the Appellate Court must not engage in its own factual review. *Romero v. State*, 800 S.W. 2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W. 3d 857, 861 (Tex. App—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony. *Wiede v. State*, 214 S.W. 3d 17, 24-25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W. 3d 853, 855 (Tex. Crim. App. 2000), modified on other grounds by *State v. Cullen*, 195 S.W. 3d 696 (Tex. Crim. App. 2006).

When reviewing the trial court's ruling on a motion to suppress, the evidence must be viewed in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W. 3d at 24; *State v. Kelly*, 204 S.W. 3d 808, 818 (Tex. Crim. App. 2006).

When the trial court makes explicit fact findings, the question is whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports the fact findings. *Kelly*, 204 S.W. 3d at 818-19. The trial court's legal ruling is reviewed de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. The trial court's ruling must be upheld if it is supported by the record and is correct under any theory of law applicable to the case. *State v. Stevens*, 235 S.W. 3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W. 3d 401, 404 (Tex. Crim. App. 2003), cert. denied, 541 U.S. 974 (2004). In the instant case, a de novo review is appropriate because the question presented is not a question of credibility but application of appropriate law to the facts. *Id.*

Art. 38.22 of the Texas Code of Criminal Procedure states that:

Sec. 3 (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless:

(2) Prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning;

However, Article 38.22 also provides that:

Sec 5. Nothing in this article precludes the admission of a statement made by the accused in open court at his trial, before a grand jury, or at an examining trial in compliance with Articles 16.03 and 16.04 of this code, or of a statement that is the res gestae of the arrest or of the offense, or of a statement that does not stem from custodial interrogation, or of a voluntary statement, whether or not the result of

9

custodial interrogation, that has a bearing upon the credibility of the accused as a witness, or of any other statement that may be admissible under law.

**b. The recorded statements between Appellant and his Father are admissible because they did not stem from custodial interrogation**

Although it is true that an oral statement made pursuant to custodial interrogation is not admissible unless the requirements of article 38.22, section 3(a) of the Texas Code of Criminal Procedure are met, section 5 of article 38.22 allows the admission of "... a statement that does not stem from custodial interrogation...." Tex. Code. Crim. Proc. Art. 38.22 Sec. 5. If a statement does not stem from custodial interrogation, it is admissible against the accused on the question of guilt. *Chambliss v. State*, 647 S.W.2d 257, 263 (Tex.Crim.App.1983). In this case, the determination of whether appellant's statement was in response to custodial interrogation hinges upon whether Appellant's father was acting as an agent of the State at the time the statement was made. *See Cates v. State*, 776 S.W.2d 170 (Tex.Crim.App.1989); *Paez v. State*, 681 S.W.2d 34 (Tex.Crim.App.1984) (both involved investigators with the Texas Department of Human Resources).

When deciding whether a non-law enforcement questioner was acting as an agent of law enforcement, numerous factors must be considered in light of the existing circumstances. *McCrory v. State*, 643 S.W.2d 725, 727 (Tex.Crim.App.1982). Case law has emphasized that "it [is] difficult to formulate a general rule to distinguish custodial interrogation from non-custodial

interrogation. A case by case approach in which the evidence is reviewed ... is deemed necessary." *Ancira v. State*, 516 S.W. 2d 924, 927 (Tex. Crim. App. 1974). When making this determination, the record as a whole must clearly establish that Appellant's statements resulted from a calculated practice which all agents of the State involved knew was reasonably likely to evoke an incriminating response. *Cates,* 776 S.W.2d at 172 (citing *McCrory*, 643 S.W.2d at 743). Simply put, the record must establish that when the Appellant made the admissions, Appellant's father was utilizing his capacity so as to accomplish what the police could not have lawfully accomplished themselves. *Cates*, 776 S.W. 2d at 172.

In *Henson v. State*, the Court of Appeals held that questioning of the defendant by a friend was not custodial interrogation by an agent of the State. *Henson v. State*, 794 S.W. 2d 385, 385 (Tex. Crim App. 1990). When the court was deciding whether the non-law enforcement questioner was acting as an agent of law enforcement, it considered numerous factors in light of the existing circumstances as well as the relevant facts. *Id.* at 390. The appellant in this case argued that his friend was acting as an agent for the following reasons: (1) his friend testified that he had talked to the main investigator of the case three times regarding the victim's disappearance, (2) that the investigator had visited the friend in his home twice, (3) that the investigator solicited his friend's assistance in the

case and (4) that based on his friend's conversations with the investigator, his friend showed that he was willing to aid the sheriff's office in the investigation. *Id.*

However, in *Henson* the State countered with the assertion that, when the appellant made his admission of guilt, his friend had not been instructed by anyone to ask any particular questions and that he was not and never had been a police officer. *Id.* Further, the State asserted that the Appellant's friend's vague passing references to his desire to provide whatever information he could to the police did not make him a police agent, but merely a cooperative citizen. *Id.* The Court of Appeals agreed with the State's argument and overruled the Appellant's point of error. The Court held:

> Based on the…uncontroverted facts, we conclude that the record supports the trial court's findings that [Appellant's friend] did not act as an agent of the State when he visited Appellant in jail and elicited Appellant's admission of guilt. The evidence shows that [Appellant's friend] went to the jail on his own out of concern for Appellant's welfare. [Appellant's friend] already knew that Appellant had confessed to the murder, but wanted to hear it directly from Appellant to be sure that Appellant had not been abused. [Appellant's friend] had not provided information to the officers that resulted in Appellant's arrest, nor was he conducting a criminal investigation in any official capacity…

*Id.* at 391. The facts in the present case are analogous to the facts in *Henson*. To begin, as in *Henson*, Appellant's father did not provide the police with any information which led to Appellant's arrest. At the time that Appellant's father visited Appellant, he was already in custody pursuant to a valid arrest warrant

based on probable cause which had been signed by a magistrate. Further, during the pretrial motion to suppress, it is evident from the testimony elicited from Detective Lucio that, like the friend in *Henson*, Appellant's father also went to the jail on his own out of concern for Appellant's welfare. The record reflects the following:

**Counsel (State):** Detective Lucio, after speaking with the defendant, did you have an opportunity to speak with his father, Elias Gaitan?

**Detective Lucio:** Actually, his father came in, and if I could look at my report, I believe his father came in the following day wanting to talk to me about his son's arrest….Yeah, it was on Monday. His dad showed up at the front lobby wanting to talk to me.

**Counsel (State):** And did you speak with him?

**Detective Lucio:** Yes, I did.

**Counsel (State):** And after, as you were talking with him, did he make any requests of you?

**Detective Lucio:** He told me that he couldn't believe that his son wouldn't have done that, that, you know, and that if he spoke to his son that his son would tell him the truth. I told him if he wanted to speak to him, he said yes. I said I would have to check with my supervisor to see if that would be all right.

2 RR 88, 13-25; 2 RR 89, 1-6. Thus, it is evident that Detective Lucio did not solicit the assistance of Appellant's father to further his investigation. There is no evidence which suggests that Appellant's father was trying to aid the Brownsville Police Department in any way, but was merely concerned about the welfare of his son. Further, Detective Lucio testified that he did not tell Mr. Gaitan what to ask

Appellant, nor did he request for Mr. Gaitan to speak with Appellant. 2 RR 90, 14-19. In fact, it is apparent from the uncontroverted facts in the record that during this conversation, Appellant's father was not conducting an investigation in any official capacity. Therefore, Appellant's father was not acting as a state agent during this recorded conversation with Appellant and Art. 38.22 of the Texas Code of Criminal Procedure simply does not apply to its admissibility. Thus, the trial court was correct in admitting Appellant's second statement into evidence.

### c. The Statements made between Appellant and Detective Lucio in the Elevator are Admissible because Appellant initiated the communication with Law Enforcement

Article 38.22, the Texas Confession Statute, generally precludes use of statements which result from custodial interrogation absent compliance with procedural safeguards consistent with *Miranda.* Tex. Code Crim. Proc. Ann. art. 38.22 § 2; *e.g., Shiflet v. State,* 732 S.W.2d 622 (Tex.Crim.App.1985). But Article 38.22 § 5 specifically exempts statements which do not "stem from custodial interrogation," statements which are "res gestae of the arrest or the offense" and all voluntary statements, whether or not they result from custodial interrogation.

An accused who has expressed a desire to deal with the police only through counsel is not subject to further interrogation until counsel has been made available, unless the accused "initiates further communication, exchanges, or

conversations with the police." *Edwards v. Arizona,* 451 U.S. 477, 485 (1981). If the police initiated the communication, then any subsequent waiver of counsel is invalid, whether it is knowing or voluntary. *Holloway v. State,* 780 S.W.2d 787, 789-90 (Tex.Crim.App.1989). If, however, the suspect initiates communications with the police and subsequently waives his Fifth Amendment rights, then interrogation without counsel is constitutional. *Id.* at 789. When an accused waives his right to counsel by *initiating* communication with police or law enforcement officials, "the law requires ... that the contact initiated by the accused must be of a type that evinces a willingness and desire for a generalized discussion about the ongoing investigation." *Baldree v. State,* 784 S.W.2d 676, 686 (Tex.Crim.App.1989). A valid waiver of the right to counsel cannot be established by showing that the accused merely responded to further police-initiated custodial interrogation. *State v. Consaul,* 960 S.W.2d 680, 688 (Tex.App.-El Paso 1997, pet. dism'd).

The controlling issue here is whether the police or Appellant initiated the communication that led to Appellant's third statement. The chain of events is undisputed and the only question is whose actions "initiated" communication. The United States Supreme Court has defined "interrogation" as follows:

> [T]he term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the

15

police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response.

*Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). Pursuant to the rule in *Rhode Island v. Innis,* Detective Lucio had no reason to know that informing Appellant that he could meet with him after he was appointed an attorney would result in Appellant eliciting an incriminating response. Case law emphasizes that general and routine questions do not constitute an interrogation. *Jones v. State,* 795 S.W.2d 171, 174 n. 3 (Tex.Crim.App.1990). Further, offhand remarks, not designed to elicit any kind of response, do not constitute an interrogation. *Innis,* 446 U.S. at 303; *Janecka v. State*, 739 S.W. 2d 813, 828-29 (Tex. Crim. App. 1987). From Appellant's perspective, the detective's remark could not possibly have amounted to an interrogation. Detective Lucio was merely informing Appellant as to his availability to speak with him once counsel was appointed and could be present. Furthermore, Appellant volunteered the res gestae statements that followed, without any prompting from the authorities. Appellant clearly stated to Detective Lucio that he wanted to work out a deal with the State, that he was not

forceful with his daughter and that the sexual acts did not occur as often as she stated that they did.  2 RR 94, 8-9.  This was done not in an interrogation room or otherwise intimidating location that could conceivably have pressured Appellant into making an incriminating statement, but in an elevator on the way back to Appellant's jail cell.  Appellant's statement that he wanted to work out a deal with the State indicated a willingness and a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Further, Detective Lucio's subsequent statement that "once [Appellant] had his attorney and wished to speak with him, he would be available," shows his intent to close the discussion with Appellant until his attorney was present.  Thus, the record reflects that Detective Lucio was not attempting to elicit any sort of incriminating response while he was in the elevator with Appellant.  Therefore, Appellant's third statement was a voluntarily initiated communication with law enforcement, did not stem from custodial interrogation, and was correctly admitted into evidence by the trial court.  Appellant's first issue should be overruled.

**B. Trial counsel did not provide ineffective assistance of counsel when she failed to object to previously excluded evidence**

### a.  Standard of Review and Applicable Statutory Law

The Sixth Amendment to the United States Constitution and section ten of Article 1 of the Texas Constitution guarantee individuals the right to assistance of

17

counsel in a criminal prosecution. U.S. CONST. amend. VI; TEX. CONST. art. 1 §10. The right to counsel requires more than the presence of a lawyer, it necessarily requires the right to effective assistance. *McMann v. Richardson*, 397 U.S 759, 771 (1970); *Powell v. Alabama*, 287 U.S. 45, 57 (1932). However, the right does not provide a right to errorless counsel, but rather to objectively reasonable representation. *Roberston v. State*, 187 S.W. 3d 475, 483 (Tex. Crim. App. 2006). A claim of ineffective assistance of his counsel is analyzed under the *Strickland* standard. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). In order to prevail on a claim of ineffective assistance of counsel, Appellant must demonstrate that: (1) his lawyer's performance was deficient, *i.e.* that the lawyer made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) the errors of counsel were so serious that there exists a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *See Strickland,* 466 U.S. at 687, 694.

**b. Appellant has not satisfied his burden of proving Ineffective Assistance of Counsel under *Strickland***

An appellate court must make a strong presumption that counsel's performance fell within the wide range of reasonably professional assistance. *Robertson*, 187 S.W. 3d at 483 (citing *Strickland*, 466 U.S. at 689). In order for an appellate court to find that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record; the court must not engage in

retrospective speculation. *Thompson v. State*, 9 S.W. 3d 808, 81 (Tex. Crim. App. 1999). "It is not sufficient that Appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata v. State*, 226 S.W. 3d 425, 430 (Tex. Crim. App. 2007). When such direct evidence is not available, the court should assume that counsel had a strategy if any reasonably sound strategic motivation can be imagined. *Garcia v. State*, 57 S.W. 3d 475, 483 (Tex. Crim. App. 2001). In making an assessment of effective assistance of counsel, an appellate court must review the totality of the representation and the circumstances of each case without the benefit of hindsight. *Robertson v. State*, 187 S.W. 3d 475, 483 (Tex. Crim. App. 2006). A single error will not typically result in a finding of ineffective assistance of counsel. *Vasquez v. State*, 830 S.W. 2d 948, 951 (Tex. Crim. App. 1992).

In order to satisfy the first prong of *Strickland*, Appellant must prove, by a preponderance of the evidence, that trial counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms. Appellant has failed to meet this burden. Although it is true that trial counsel for Appellant failed to object to the previously suppressed statement, "an appellate court should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation…whether those actions were of strategic design or the result of

negligent conduct. *Thompson v. State*, 9 S.W. 3d 808, 814 (Tex. Crim. App. 1999).

Moreover, even if this Honorable Court was to find that trial counsel's performance was deficient, Appellant has not shown that but for the counsel's errors, the result of the proceedings would have been different. To prove that Appellant was prejudiced, Appellant must show that there is a reasonable probability, or a probability sufficient to undermine confidence in the outcome of trial. Admission of Appellant's first statement was in no way critical to the outcome of the case. Although this statement was initially suppressed in a pretrial motion, Appellant did not make any direct admissions during his conversation with Detective Lucio. In fact, during testimony in the motion to suppress, trial counsel for Appellant stated the following regarding Appellant's first statement:

> **Counsel(Appellant):** There's not a straightforward admission. There's some -- Detective Lucio in his conversation with my client told him what the accusations were, and he goes on to state in his report, and I expect him to testify that my client didn't deny them, and they are going to try to use his silence as an admission of guilt…

2 RR. 87, 3-9. The second two admissions of Appellant, which were deemed admissible by the trial court, were much more damaging to Appellant's case. During Appellant's conversation with his father, direct admissions *were* made by Appellant. 2 RR 90, 7-9. Appellant did not deny the allegations made against him and informed his father that his actions were not forceful against his daughter. 2

20

RR 90, 11-13.  Further, during the third statement, which occurred between Appellant and Detective Lucio, Appellant again confirmed that he was not foreceful with his daughter, that the sexual acts did not occur as often as she stated that they did, and that he wanted to work out a deal with the State.  2 RR 94, 8-9. Thus, it is hard to say how Appellant's silence during the first statement prejudiced Appellant when the jury was able to consider direct admissions made by Appellant regarding his daughter's accusations.

Further, besides the admission of these statements, there was an overwhelming amount of evidence which proved Appellant's guilt.  During trial on the merits, the State introduced into evidence two letters from Appellant to the victim.  4 RR 37, 10.  In these letters, Appellant asked the victim to create a video recanting her statements and instructed her not to speak with any of the State's attorneys.  4 RR 42, 15-17.  Testimony from Johanna Frausto, a forensic interviewer employed at the Cameron County Child Advocacy Center, was also heard by the jury.  3 RR 129, 4-5.  Through this testimony, the State was able to show the victim's video statement detailing the extent of the sexual abuse that she endured.  3 RR 142, 6-12.  The State was also able to show that the victim had endured physical trauma to her hymen through the testimony of Goldie Stralder, a CART nurse who worked at Valley Baptist Medical Center and examined the victim after the outcry was made.  3 RR 74, 17-23.  After considering all of the

available evidence, the jury entered a guilty verdict of all counts as they were alleged in the indictment. CR p. 143-146. Due to the amount of evidence introduced by the State at trial, it is difficult to say that Appellant was harmed by trial counsel's failure to object to Appellant's reaction to the initial interview by Detective Lucio. The admission of Appellant's silence was simply not critical to the outcome of the case. Since Appellant has not shown that trial counsel's failure to object to previously excluded evidence would have led to a different outcome in this case, Appellant has not met his burden of establishing that he received ineffective assistance of counsel. Therefore, Appellant's second point of error should be overruled.

### Prayer

**WHEREFORE, PREMISES CONSIDERED**, The State prays this Honorable Court will affirm the trial court's ruling when it denied Appellant's motion to suppress the second and third set of statements that were introduced at trial. The State also prays this Honorable Court will find that Appellant's trial counsel was not ineffective when she failed to object to previously excluded evidence, and deny any and all relief requested by Appellant on these grounds.

Respectively Submitted,
**Luis V. Saenz**
County and District Attorney

_____

**Kristine N. Trejo**

Assistant District Attorney
Cameron County, Texas
State Bar No. 24091764

## Certificate of Compliance

I certify that this document contains 6,508 words (counting all parts of the document). The body text is in 14 point font, and the footnote text is in 12 point font.

Kristine N. Trejo

## Certificate of Service

I certify that a copy of the foregoing State's Appellate Brief was served in compliance with Tex. R. App. P. 9.5 on this the 3rd day of December 2015, to the following attorney of record for Appellant, Abraham Parra, by email.

Joseph Moreno
23409 El Paso Drive
Harlingen, Texas 78552
(F) (210) 247-9433
(P) (956) 536-8359
(E) j_moreno_02@yahoo.com

Kristine N. Trejo